OPINION OF THE COURT
 

 Levine, J.
 

 Plaintiff Michelle Huang commenced this Federal civil rights action alleging that her minor son, Raymond Yu, was falsely imprisoned.
 

 In 1996, Yu was adjudicated a juvenile delinquent for attempted assault in the second degree and placed for 18 months with the State Division for Youth, predecessor to the Office of Children and Family Services (OCFS). Yu’s scheduled release date was September 13, 1997.
 

 Yu was placed in the Ella McQueen Residential Center, a limited secure facility. In January 1997, he was transferred to OCFS’s Brooklyn Evening Reporting Center placement pro
 
 *601
 
 gram, a transitional program for youths returning to their communities from residential centers. The program is less restrictive than a residential center in that it provides evening and weekend supervision but permits participants to live at home.
 

 One of the conditions of Yu’s participation in the less restrictive program was that he report daily, which he failed to do on March 22 and 23, 1997. Consequently, his release date was set back two days to account for his absence. Yu was again absent without leave for 96 days from March 28 until July 2, 1997, when OCFS discovered that he was in the custody of the New York City Department of Correction at Bikers Island, a City-operated jail facility, on unrelated charges of murder in the second degree and gang assault in the first degree, committed while he was AWOL. OCFS then added the 96 days to Yu’s placement, making his release date December 20, 1997.
 

 The Department of Correction held Yu at Bikers Island until September 23, 1997, at which time it returned him to OCFS. At the time of Yu’s return to OCFS custody, the criminal charge was still pending. OCFS placed Yu back at a residential center. Further, OCFS set back his release date by an additional 83 days to reflect the July 2 — September 23 period during which he was detained at Bikers Island. Consequently, Yu’s new release date was March 13, 1998.
 

 Family Court granted temporary extensions of Yu’s placement and fixed his release date as April 23, 1998. Following his release, Yu pleaded guilty to attempted murder in the second degree.
 

 In July 1998, plaintiff commenced this action pursuant to 42 USC §§ 1983 and 1985 alleging that defendants — OCFS officials — both in their official and individual capacities (1) violated Yu’s due process rights when they returned him to the more restrictive residential center instead of the evening reporting center without a hearing, (2) violated Yu’s Fourth and Fourteenth Amendment rights by not crediting the 83 days served at Bikers Island against his OCFS placement, thereby unlawfully confining him from December 20, 1997 until April 23, 1998, and (3) conspired to deprive Yu of his civil rights. Plaintiff sought declaratory relief and $50 million in damages, plus attorneys’ fees.
 

 The United States District Court for the Southern District of New York granted summary judgment in defendants’ favor, dismissing all claims (1999 WL 760633, 1999 US Dist Lexis
 
 *602
 
 15267). The court concluded that the claim for money damages was barred by the Eleventh Amendment, that Yu did not have a right to a hearing upon his reinstatement to Ella McQueen, and that Huang failed to state a claim for violation of 42 USC § 1985. The court also denied the false imprisonment claim and held that Yu’s term of confinement was correctly calculated under Executive Law § 510-b (7) (b).
 

 On appeal, the Second Circuit rejected the District Court’s conclusion that Huang’s claims were barred by the Eleventh Amendment. (251 F3d 65.) It agreed with the District Court’s conclusion that a hearing was not required prior to Yu’s return to Ella McQueen. The court concluded that Huang’s section 1983 claim for false imprisonment was not barred by
 
 Heck v Humphrey
 
 (512 US 477 [holding that section 1983 claims are barred where a judgment favorable to the plaintiff would imply the invalidity of a conviction or sentence which was not otherwise previously invalidated]). The court determined that an open question exists regarding whether section 510-b (7) (b) requires that a credit against a youth’s OCFS placement be given for pretrial detention served on an unrelated charge when that charge has not culminated in conviction prior to the youth’s discharge. The court certified the following question to us:
 

 “[Wjhether appellees properly refused to credit Yu, under New York Executive Law Subsection 510-b (7) (b), for the eighty-three days served at [Hikers] on an unrelated charge that did not culminate in a conviction until after Yu’s release from OCFS custody.”
 

 We accepted certification (96 NY2d 841) and now answer the question in the affirmative.
 

 Executive Law § 510-b (7) (b) states in relevant part:
 

 “When a child who is placed with [OCFS] * * * is absent from a division facility or an authorized agency without the consent of the director of such facility or authorized agency, the absence shall interrupt the calculation of the time of such placement * * *. Any time spent by such child in custody from the date of absence to the date the placement * * * resumes
 
 shall be credited
 
 against the time of such placement or commitment provided:
 

 “(a) That such custody was due to an arrest or surrender based upon the absence; or
 

 
 *603
 
 “(b)
 
 That such custody arose from an arrest or surrender on another charge which did not culminate in a conviction, adjudication or
 
 adjustment” (emphasis added).
 

 Plaintiff argues that the statutory provision requires credit for detention time on “another charge”
 
 unless
 
 the charge has not culminated in a “conviction, adjudication or adjustment” when the placement resumes and the duration of placement is recalculated. Thus, plaintiff argues, the absence of a disposition of the unrelated charge, favorable or unfavorable, at the critical time entitles him to statutory credit. OCFS, on the other hand, reads section 510-b (7) (b) to provide for a credit only after the unrelated criminal charge has been favorably resolved. We agree with OCFS that plaintiff’s entitlement to credit is contingent on his establishing that a favorable
 
 culmination
 
 occurred before the time credit against the OCFS placement is to be determined. Literally, entitlement to the credit for detention on another charge exists only “provided” the charge was not resolved in a conviction, adjudication or adjustment. “[A] statutory grant to which a proviso is annexed should be read
 
 as if no power was given
 
 other than that contained within the bounds of the proviso” (McKinney’s Cons Laws of NY, Book 1, Statutes § 212 [emphasis supplied]). Thus, the right to the credit is entirely contingent on establishing that the other charge did not culminate in a conviction, adjudication or adjustment. Further, the use of the past tense in the proviso presumes a favorable culmination occurred before a credit may be allowed. Since the express statutory condition — an arrest that did not culminate in a conviction, adjudication or adjustment — was not met here, OCFS properly denied Yu credit for the time served.
 

 The legislative history further supports this conclusion. Section 510-b (7) (b) was enacted in 1992 and is based on an identical provision in former section 525 (5) (b) of the Executive Law
 
 (compare,
 
 L 1992, ch 465, § 22,
 
 with
 
 L 1978, ch 514, as amended by L 1984, ch 691, § 2). The language at issue here, regarding the effect of a conviction, was added as part of a 1984 amendment to the statute, which altered the statute to read:
 

 “(b) That such custody arose from an arrest
 
 or surrender
 
 on another charge which did not culminate in
 
 a conviction,
 
 adjudication or adjustment.”
 

 The Memorandum of the Attorney General, contained in the
 
 *604
 
 Bill Jacket, states that the intent of the amendment was to clarify that an escaped youth detained on subsequent charges could receive credit
 
 “[o]nly if* * * exonerated
 
 of the subsequent charges”
 
 (see,
 
 Mem of Attorney General, Bill Jacket, L 1984, ch 691, at 6 [emphasis added], reprinted in 1984 NY Legis Ann, at 247). The Memorandum additionally explains that the purpose of the statute was to “explicitly deny crediting in cases involving subsequent criminal convictions,” as well as when charges culminate in adjudications and adjustments.
 

 Accordingly, the certified question should be answered in the affirmative.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered as follows: Appellees properly refused to credit Yu, under New York Executive Law § 510-b (7) (b) for the 83 days served at Rikers on an unrelated charge that did not culminate in a conviction until after Yu’s release from OCFS custody.