■ In the Matter of Excellus Health Plan, Inc., Respondent, v Gregory V. Serio, as Superintendent of Insurance, Appellant. [757 NYS2d 345] —Cardona, P.J. Appeal from a judgment of the Supreme Court (Cobb, J.), entered July 19, 2002 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul actions and determinations embodied in two letters from respondent.

Petitioner is a New York not-for-profit health insurer licensed under Insurance Law article 43 and certified as a health maintenance organization (hereinafter HMO) under Public Health Law article 44. It provides health care coverage to people in 45 counties in upstate New York. Petitioner has several operating divisions within the company doing business under the following entities: BlueCross BlueShield of the Rochester Area, BlueCross BlueShield of Central New York, Blue-Cross BlueShield of Utica-Watertown, Univera Healthcare-Western New York, Univera Healthcare-Central New York and Univera Healthcare-Southern Tier.

In 1995, in response to the need to expand affordable health

care coverage for New York residents who buy health insurance on an individual basis and who do not have coverage through their employers, the Legislature enacted, among other things, Insurance Law §§ 4321 and 4322 (L 1995, ch 504). These sections require all Insurance Law article 43 corporations and HMOs certified under Public Health Law article 44 to offer, on a statewide basis, a single, comprehensive, standardized, individual direct payment HMO contract and a "point-of-service" (hereinafter POS) contract, which permits enrollees to obtain services from nonparticipating providers.

As part of the same reform package, the Legislature amended Insurance Law § 4308 by adding new subdivisions (g) through (j), enacting the so-called "File and Use Statute." These subdivisions provide an alternate method to the existing procedure of setting premium rates, which involve public hearings and obtaining respondent's approval (see Insurance Law § 4308 [c] [1]-[3]), an admittedly time-consuming, cumbersome and often expensive process. The new subdivisions permit insurers and HMOs to adopt a "file and use" rating methodology for community rated[1] contracts of HMOs and Insurance Law article 43 corporations. Under the "file and use" procedure, an insurer desiring to increase or decrease premiums for any contract subject to section 4308 submits a rate filing or application to respondent which is "deemed approved, provided that" the "anticipated incurred loss ratio for [the] contract form" falls within prescribed minimum and maximum loss ratios (between 80% and 105% for individual direct pay contracts) as certified by an actuary (Insurance Law § 4308 [g] [1]; [j]). A loss ratio is determined by dividing claims incurred by premiums earned. For example, a loss ratio of 80% means that for every $1 of premiums collected the insurer paid 80¢ in claims. A loss ratio of 105% means that for every dollar of premiums collected the insurer paid $1.05 in claims. The "anticipated incurred loss ratio" is an actuarial prediction made at the beginning of the year (for a January 1st rate adjustment) of the loss ratio for the upcoming year. A loss ratio below 80% at year's end[2] requires the insurer to issue a refund or credit a dividend to the affected subscribers (see Insurance Law § 4308 [h] [2]). If a loss ratio has actually risen above the 105% maximum level at year's end, the File and Use Statute directs a premium increase

---

1. Community rating is a premium setting methodology in which the premium for "all persons covered by a policy or contract form is the same, based on the experience of the entire pool of risks covered by that policy or contract form" (Insurance Law § 4317 [a]).

2. HMOs and insurers must file a year-end report indicating the company's actual loss ratio (see Insurance Law § 4308 [h] [1]).

(*see* Insurance Law § 4308 [h] [3]). Because the File and Use Statute requires insurers to provide each contract holder and subscriber with at least 30 days' written notice of a premium rate increase, respondent has instructed insurers to submit their rate filings 30 days before the effective date of the new rates. As a practical matter, insurers submit their rate filings to respondent 30 days in advance and simultaneously notify subscribers of the revised rates.

By letter dated November 13, 2001, respondent informed petitioner that he was modifying his review procedures for certain file and use rate applications in order "to provide [him] with sufficient time to make the necessary determination that the requested premium rates are in compliance with the requirements of [Insurance Law §] 4308." The letter also advised petitioner that rate adjustments for, among other things, individual direct payment HMO and POS contracts, "may not be implemented until [respondent's] review is completed and the company is so advised in writing." It further informed petitioner to "continue to provide the required 30 day written notice to [its] subscribers based upon the requested effective date."

Petitioner's rate filings in November 2001 contained new premium rates effective January 1, 2002. Therefore, petitioner sent notices to its direct pay subscribers in accordance with the requirement of Insurance Law § 4308 (g) (2). On November 30, 2001, respondent acknowledged receipt of petitioner's rate filings and, among other things, advised that they were going to be reviewed for compliance with Insurance Law § 4308. In a letter dated January 10, 2002, after the effective date of the new premium rates, respondent notified petitioner that review had been completed and he was modifying some of petitioner's filed rates by setting lower rates and, in two instances, denying any rate increase. Thereafter, petitioner commenced this CPLR article 78 proceeding to annul respondent's purported authority to review and modify premium rates filed pursuant to Insurance Law § 4308 (g). Supreme Court granted petitioner's application, finding that respondent lacked the authority to modify petitioner's premium rate filings which complied with Insurance Law § 4308 (g).

On appeal, respondent argues that the file and use methodology set forth in Insurance Law § 4308 (g) is an alternate procedure which does not override or eliminate his authority under Insurance Law § 4308 (b) to disapprove or modify premium rates if he finds that such rates are excessive, inadequate or unfairly discriminatory. Construing Insurance Law § 4308 in

accordance with the principle of "expressio unius est exclusio alterius" (the expression of one thing excludes another) (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 240), respondent contends that by expressly providing for the exemption of file and use rate filings from the requirements of subdivision (c) of that statute, it should be inferred that the Legislature did not intend to exempt those filings from the provisions of subdivision (b) for, if it had, it would have said so as it did in subdivision (c). He further argues that the file and use provisions (subdivisions [g] through [j]) and subdivision (b), as components of the same section, should be read in such a manner as will harmonize one with the other (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 98). Respondent contends that the subdivisions can be reconciled by interpreting them to indicate that rates filed pursuant to Insurance Law § 4308 (g) meeting the stated conditions are approved by operation of law unless respondent determines that the rates are excessive, inadequate or unfairly discriminatory pursuant to section 4308 (b). On the other hand, petitioner contends that the plain language of section 4308 (g) unambiguously expresses the legislative intent that all file and use rate applications containing the requisite loss ratio actuarial certifications are "deemed approved" upon filing and, therefore, such applications are not subject to respondent's subsequent approval.

Initially, we note that "when applying its special expertise in a particular field to interpret statutory language, an agency's rational construction is entitled to deference. Even in those situations, however, a determination by the agency that 'runs counter to the clear wording of a statutory provision' is given little weight" (*Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98, 102-103 [1997], quoting *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980] [citations omitted]). Here, the question of what "deemed approved" means within the context of Insurance Law § 4308 (g) (1) is one " 'of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent' " (*Matter of Guido v New York State Teachers' Retirement Sys.*, 94 NY2d 64, 68 [1999], quoting *Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225, 231-232 [1996]). Notably, "[t]he primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature" (McKinney's Cons Laws of NY, Book 1, Statutes § 92). "The legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction" (McKinney's Cons Laws of NY, Book 1, Statutes § 94).

Here, there is no genuine dispute that the "deemed approved" language of Insurance Law § 4308 (g) (1) means approved by operation of law. Thus, a rate filing or application submitted to respondent "shall be deemed approved" or approved by operation of law, *"provided that* (A) the anticipated incurred loss ratio for a contract form shall not be less than [eighty percent[3]] for individual direct payment contracts * * * nor * * * more than one hundred five percent of the anticipated earned premium, and (B) the corporation submits, as part of such filing, a certification by a member of the American Academy of Actuaries * * * that that corporation is in compliance with the provisions of this subsection" (Insurance Law § 4308 [g] [1] [emphasis added]). Literally, approval of a rate filing by operation of law exists "provided that" it contains the requisite loss ratio actuarial certification. " '[A] statutory grant to which a proviso is annexed should be read *as if no power was given* other than that contained within the bounds of the proviso' " (*Huang v Johnson*, 96 NY2d 599, 603 [2001], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 212 [emphasis supplied in *Huang v Johnson*]). Therefore, we agree with petitioner that the plain language of Insurance Law § 4308 (g) (1) unambiguously expresses the Legislature's intent that all file and use rate applications containing the requisite loss ratio actuarial certifications are approved by operation of law upon filing.[4] Had the Legislature wished to require respondent's subsequent approval of a rate filing or application, it could have done so through appropriate wording. " 'The failure of the Legislature to include a matter within a particular statute is an indication that its exclusion was intended' " (*People v Tychanski*, 78 NY2d 909, 911 [1991], quoting *Pajak v Pajak*, 56 NY2d 394, 397 [1982]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 74). Respondent's interpretation, however laudable its purpose, imports a policy not expressed in the plain words of the statute.

Mercure, Peters, Carpinello and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.

---

3. As of January 1, 1998 and thereafter (*see* Insurance Law § 4308 [j]).

4. Certainly, respondent has the oversight power to make sure premium rate filings are within the allowed range specified in the statute.