Matter of Applewhite v New York State Bd. of Parole (2018 NY Slip Op 08989)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

Matter of Applewhite v New York State Bd. of Parole

2018 NY Slip Op 08989

Decided on December 27, 2018

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 27, 2018

526646

[*1]In the Matter of KEITH APPLEWHITE, Appellant,
vNEW YORK STATE BOARD OF PAROLE, Respondent.

Calendar Date: December 3, 2018
Before: Garry, P.J., Egan Jr., Lynch, Clark and Mulvey, JJ.


Keith Applewhite, Woodbourne, appellant pro se.
Barbara D. Underwood, District Attorney, Albany (Brian D. Ginsberg of counsel), for respondent.

MEMORANDUM AND ORDER
Egan Jr., J.
Appeal from a judgment of the Supreme Court (Schick, J.), entered March 26, 2018 in Sullivan County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent denying his request for parole release.
In 1991, petitioner was convicted of murder in the second degree and criminal possession of a weapon in the second degree. He was sentenced to an aggregate term of 25 years to life in prison. In January 2017, he made his third appearance before respondent seeking to be released to parole supervision. Respondent denied his request and ordered him held for an additional 24 months. The denial was affirmed on administrative appeal, and petitioner commenced this CPLR article 78 proceeding
challenging it. Following joinder of issue, Supreme Court
dismissed the petition. Petitioner now appeals, and we affirm.
Executive Law article 12-B establishes the procedure for affording inmates discretionary release and sets forth criteria that respondent must consider in determining whether to grant release on parole. Upon review, so long as respondent complied with the statutory requirements set forth in Executive Law §
259-i, its parole release decision will not be disturbed (see Matter of Pedraza v New York State Bd. of Parole, 166 AD3d 1194, ___, 86 NYS3d 666, 667 [2018]; Matter of Robinson v New York State Bd. of Parole, 162 AD3d 1450, 1451 [2018]). Discretionary release to parole supervision is not to be granted as a reward for good behavior while in prison; rather, respondent must consider whether "there is a reasonable probability that, if such inmate is released, he [or she] will live and remain at liberty without violating the law, and that his [or her] release is not incompatible with the welfare of society and will not so deprecate the seriousness of his [or her] crime as to undermine respect for law" (Executive Law § 259-i [2] [c] [A]; see Matter of King v New York State Div. of Parole, 83 NY2d 788, 790 [1994]; Matter of Vaello v Parole Bd. Div. of [*2]State of N.Y., 48 AD3d 1018, 1019 [2008]). In making this determination, respondent must also consider other statutory factors, such as the inmate's institutional record — including program goals and accomplishments, academic achievements, vocational education and training and work assignments — as well as the inmate's postrelease plans, the seriousness of the inmate's underlying offense, the inmate's prior criminal record (see Executive Law § 259-i [2] [c] [A] [i], [iii], [vii], [viii]; 9 NYCRR 8002.3 [a] [1], [3], [7], [8]) and the COMPAS Risk and Needs Assessment instrument (see Executive Law § 259-c [4]; Matter of Applegate v New York State Bd. of Parole, 164 AD3d 996, 997 [2018]; Matter of Hill v New York State Bd. of Parole, 130 AD3d 1130, 1131 [2015])[FN1]. Importantly, Executive Law § 259-i (2) (c) (A) "does not purport to define the exclusive universe of all information which may be considered" by respondent (Matter of Grigger v New York State Div. of Parole, 11 AD3d 850, 852-853 [2004] [emphasis omitted], lv denied 4 NY3d 704 [2005]). Further, respondent is not required to articulate every statutory factor that it considered, nor must it give each factor equal weight, as long as the record demonstrates that respondent considered the appropriate statutory factors in rendering its determination (see Matter of Beodeker v Stanford, 164 AD3d 1555, 1556 [2018]; Matter of Arena v New York State Dept. of Corr. & Community Supervision, 156 AD3d 1101, 1101 [2017]).
Contrary to petitioner's contention, we do not find that respondent's consideration of certain unspecified "consistent community opposition" to his parole release was outside the scope of the relevant statutory factors that may be taken into account in rendering a parole release determination (see Executive Law § 259-i). As relevant here, Executive Law § 259-i specifically contemplates that community members are free to express their opinion to respondent regarding the potential release of inmates on parole (see Executive Law § 259-i [2] [c] [B]; 9 NYCRR 8000.5 [c] [2]). Specifically, Executive Law § 259-i (2) (c) (B) provides, in relevant part, that "[w]here a crime victim or victim's representative . . . or other person submits to [respondent] a written statement concerning the release of an inmate, [respondent] shall keep that individual's name and address confidential" (emphasis added). The corresponding regulation governing parole records demonstrates why limiting access to information and protecting confidentiality in such a manner is paramount; such limitations are essential in order to, among other things, "protect the internal process by which division [of parole] personnel assist [respondent] in formulating individual decisions with respect to inmates and releasees" and "to permit private citizens to express freely their opinions for or against an individual's parole" (9 NYCRR 8000.5 [c] [2]; see Matter of Jordan v Hammock, 86 AD2d 725, 725 [1982], appeal dismissed 57 NY2d 674 [1982]; see also Matter of Grigger v New York State Div. of Parole, 11 AD3d at 852-853). By statutorily protecting the confidentiality of those members of the community — in addition to the crime victim or victim's representative — who choose to express their opinion, either for or against, an inmate's bid to obtain parole release, the Legislature demonstrated a clear intent that such opinions are a factor that may be considered by respondent in rendering its ultimate parole release decision. Significantly, such statements and opinions are germane to respondent's determination as to whether an inmate will live and remain at liberty without violating the law, whether such release is compatible with the welfare of society and whether an inmate's release will deprecate the seriousness of the underlying crime as to undermine respect for the law — statutory factors that respondent must consider in rendering its parole release determinations (see Executive Law § 259-i [2] [c] [A]; Matter of Clark v New York State Bd. of Parole, 166 AD3d 531, ___, 2018 NY Slip Op 08071, *1 [2018]).[FN2]
Further, in addition to consideration of expressions of both community support and community opposition, respondent considered all of the requisite statutory factors, such as the [*3]serious nature of petitioner's crimes, his lack of criminal history, his positive program and vocational accomplishments, his relatively clean prison disciplinary record, his postrelease plans and his low score on the COMPAS Risk and Needs Assessment instrument (see Matter of Applegate v New York State Bd. of Parole, 164 AD3d at 997; Matter of Hill v New York State Bd. of Parole, 130 AD3d at 1131). Although respondent evidently placed greater emphasis on the seriousness of petitioner's offenses and the "consistent community opposition" to his release on file, it also considered positive factors weighing in favor of petitioner's release, and there is no indication that its denial of parole release relied on any incorrect or inappropriate information. Upon our review of the record, therefore, we are satisfied that respondent considered the appropriate statutory factors and sufficiently set forth its reasoning in denying petitioner's application for parole release (see Matter of Betancourt v Stanford, 148 AD3d 1497, 1498 [2017]), and that said determination did not evince any "'irrationality bordering on impropriety,'" nor was it arbitrary and capricious (Matter of Silmon v Travis, 95 NY2d 470, 476 [2000], quoting Matter of Russo v New York State Bd. of Parole, 50 NY2d 69, 77 [1980]; see Matter of Boccadisi v Stanford, 133 AD3d 1169, 1171 [2015]; Matter of Hamilton v New York State Div. of Parole, 119 AD3d at 1273-1274; see also Matter of Clark v New York State Bd. of Parole, 2018 NY Slip Op 08071 at *1; compare Matter of Comfort v New York State Bd. of Parole, 101 AD3d 1450, 1450-1451 [2012]). Accordingly, we find that Supreme Court properly dismissed petitioner's CPLR article 78 proceeding.
Lynch and Clark, JJ., concur.

Garry, P.J. (dissenting).


We respectfully dissent. Respondent based its denial of petitioner's parole, in part, on "consistent community opposition" — an element that is not among the factors that the Legislature directed respondent to consider in making parole release determinations (see Executive Law § 259-i [2] [c] [A]). Although the majority's approach may have some practical appeal, we are bound by the governing law. It is well established that respondent may not rely upon factors outside the scope of Executive Law § 259-i in making decisions concerning parole release (see Matter of King v New York State Div. of Parole, 83 NY2d 788, 791 [1994]; Matter of Duffy v New York State Dept. of Corr. & Community Supervision, 132 AD3d 1207, 1209 [2015]; Matter of Vaello v Parole Bd. Div. of State of N.Y., 48 AD3d 1018, 1019 [2008]; Matter of James v Chairman of N.Y. State Div. of Parole, 19 AD3d 857, 858 [2005]; see also Matter of Hamilton v New York State Div. of Parole, 119 AD3d 1268, 1273 [2014]; cf. Matter of Grigger v New York State Div. of Parole, 11 AD3d 850, 852 [2004], lv denied 4 NY3d 704 [2005]).
"Although parole release decisions are discretionary and entitled to deference, they must satisfy [the] statutory requirements" (Matter of Vaello v Parole Bd. Div. of State of N.Y., 48 AD3d at 1019 [citations omitted]; see Matter of Robinson v New York State Bd. of Parole, 162 AD3d 1450, 1451 [2018]; Matter of Constant v Stanford, 157 AD3d 1175, 1175-1176 [2018]). As relevant here, Executive Law § 259-i provides that, in making parole release decisions, respondent shall consider: the inmate's institutional record, including program goals and accomplishments, academic achievements, vocational education, training, or work assignments; the inmate's performance in a temporary release program; the inmate's postrelease plans, including available community resources, employment, education, training and support services; the statements of the crime victim or his or her representative, if the victim is deceased or incapacitated; the seriousness of the offense, including mitigating and aggravating factors and recommendations of the sentencing court; and the inmate's prior criminal record and probation violations (see Executive Law § 259-i [2] [c] [A]
[i]-[iii], [v], [vii], [viii]; see also Matter of Banks v Stanford, 159 AD3d 134, 142-143 [2018]; Matter of Hamilton v New York State Div. of Parole, 119 AD3d at 1270)[FN3]. Noticeably absent from the statutory language is any reference to community opposition as an appropriate factor for consideration. Contrary to respondent's claim, materials expressing community opposition are not analogous to the victim impact statements that are specifically referenced in the statute (see Executive Law § 259-i [2] [c] [A] [v]; see e.g. Matter of Duffy v New York State Dept. of Corr. & Community Supervision, 132 AD3d at 1209), and the regulations relied upon by respondent do not support this interpretation (see 9 NYCRR 8000.5 [c] [2]; 8002.4 [e]).
As the majority notes, a separate section of Executive Law § 259-i reveals that the Legislature contemplated that community members may express opinions to respondent regarding the release of inmates on parole. Executive Law § 259-i (2) (c) (B) provides that the identities of victims, their representatives and "other person[s]" who submit written statements must be kept confidential (emphasis added; see 9 NYCRR 8000.5 [c] [2]). However, there is a significant difference between protecting the freedom of community members to express their opinions to respondent in confidence and directing respondent to include such opinions among the factors to be taken into account in its ultimate parole release determinations. Executive Law § 259-i (2) (c) (A) includes detailed language defining the specific, limited circumstances in which nonvictims may make statements to respondent solely as victim's representatives, describes information that may be included in victim impact statements, and directs respondent to maintain such statements on file, but includes no mention of statements from anyone other than a victim or a representative. Under well-established rules of statutory construction, the Legislature's failure to include materials provided by community members among the factors to be considered by respondent must be understood to reveal that the exclusion was intentional (see e.g. People ex rel. Schneiderman v Sprint Nextel Corp., 26 NY3d 98, 118 [2015], cert denied ___ US ___, 136 S Ct 2387 [2016]; Matter of Excellus Health Plan v Serio, 303 AD2d 864, 868 [2003], affd 2 NY3d 166 [2004]).
Contrary to the majority statement, a determination that community opposition may not be considered does not foreclose the consideration of community support. Executive Law § 259-i (2) (c) (A) (iii) expressly directs respondent to consider the inmate's "release plans[,] including community resources, employment, education and training and support services." Relatives, friends, clergy and other community members who support an inmate's release certainly fall within the meaning of available community resources, particularly when — as often happens — their statements express familiarity with the inmate's character and personal attributes, provide information on the inmate's training or job skills, or offer assistance with postrelease employment or housing. "Community opposition," on the other hand, cannot be said to fall within any of the factors that the Legislature chose to direct respondent to consider in determining whether "there is a reasonable probability that, if such inmate is released, he [or she] will live and remain at liberty without violating the law, and that his [or her] release is not incompatible with the welfare of society and will not so deprecate the seriousness of his [or her] crime as to undermine respect for law" (Executive Law § 259-i [2] [c] [A]).
Finally, we note that it is not possible to determine what materials or information were included in the "community opposition" that respondent relied upon; this information was never provided, in camera or otherwise. Respondent's counsel suggests that the materials may possibly consist of victim impact statements, which respondent could properly have considered (see Executive Law § 259-i [2] [c] [A] [v]). However, this simply cannot be discerned from the record. The Court of Appeals has directed that respondent "must provide [an] inmate with a proper hearing in which only the relevant guidelines are considered" (Matter of King v New York [*4]State Div. of Parole, 83 NY2d at 791 [emphasis added]). As respondent did not provide petitioner with such a hearing, we would annul the determination and remit the matter for a new hearing and a parole release determination based solely upon the statutory factors.
Mulvey, J., concurs.
ORDERED that the judgment is affirmed, without costs.
Footnotes

Footnote 1: Certain additional statutory factors are not relevant here (see Executive Law § 259-i [c] [A] [ii], [iv], [v], [vi]), nor is consideration of the transitional accountability plan set forth in Correction Law § 71-a.

Footnote 2: Indeed, respondent also considered numerous letters submitted in support of petitioner's release. Tellingly, petitioner does not fault respondent's consideration of these submissions.

Footnote 3: There are additional statutory factors not relevant here (see Executive Law § 259-i [2] [c] [A] [iv], [vi]). It bears noting that, pursuant to the 2011 amendments to Executive Law article 12-B, respondent is required to take into account the COMPAS Risk and Needs Assessment instrument (see Executive Law § 259-c [4]), which it did in this case, and, in some instances not applicable here, the transitional accountability plan set forth in Correction Law § 71-a (see Matter of Rivera v New York State Div. of Parole, 119 AD3d 1107, 1108-1109 [2014]).