*72 OPINION OF THE COURT
Meyer, J.
When a court in sentencing a convicted defendant fixes a maximum but no minimum sentence, may the Parole Board, acting under section 259-i of the Executive Law fix as the minimum period of incarceration (MPI) a period in excess of one third of the maximum, even though the sentencing court could not have done so?[1] Has a sentenced defendant a cognizable liberty interest in the right to seek parole so that a minimum sentence in excess of that which could have been fixed by a court violates his right to due process? We hold that the Parole Board may impose an MPI in excess of that which a Judge could have fixed and that its doing so violates no liberty interest of constitutional dimension. We therefore reverse.
Petitioner was initially charged with conspiracy in the first degree (a class B felony, Penal Law, § 105.15) in that he offered $10,000 to another individual to murder his father-in-law. Although he initially pleaded guilty to the charge, petitioner’s conviction was later reversed because there had been no overt act (57 AD2d 578). He was subsequently convicted after trial of criminal solicitation in the first degree and sentenced to a maximum term of four years imprisonment. No MPI was fixed by the court.[2]
A three-member panel of the Parole Board was therefore convened in order to fix petitioner’s MPI. Under the Executive Law the Parole Board is required to establish written guidelines for use in making MPI decisions and to issue a detailed written statement of the reasons if the board departs from its guidelines in fixing an MPI.[3] Under the guidelines then in effect, when, as in petitioner’s case, the offense had not been consummated, the "attempt or conspiracy” to commit the crime would be rated one category lower than that to which *73 the substantive offense was assigned. The Parole Board, on the theory that the solicitation of a crime should receive similar placement, initially placed petitioner’s crime in offense severity level two, which called for an MPI within the range of 28 to 38 months. Thereafter, considering that this range was unduly lenient for the solicitation of a homicide, the board set petitioner’s MPI at four years, the same as his maximum sentence, and issued a statement explaining its action.[4]
Petitioner then commenced this article 78 proceeding to review the board’s determination, contending that its decision to set his MPI at four years was arbitrary and capricious, that it conflicted with the legislative intent behind the statutory sentencing scheme and with the sentencing Judge’s purpose in abstaining from the imposition of an MPI, and that it violated his due process right to a meaningful opportunity for parole. Special Term granted the petition, reasoning that since petitioner’s conspiracy charge had been dismissed, the Parole Board should not have pigeonholed petitioner’s offense at one category lower than the solicited offense of homicide. It held further that on remand the board could not fix petitioner’s MPI in excess of one third of his maximum sentence, inasmuch as the sentencing court could not have done so and "[t]here appears to be no authority for a Parole Board to exceed the restrictions imposed by the Legislature upon the sentencing court” (98 Misc 2d 251, 254).
The Appellate Division affirmed (69 AD2d 520), noting that sentencing Judges had come to expect that where they did not impose an MPI the convicted defendant would receive parole consideration at or before the one-third point in his sentence, an expectation which, that court suggested, is buttressed by notions of due process. That conclusion is, however, without foundation.
The Supreme Court has held, and as a matter of State constitutional law we agree, that because a person’s rightful liberty interest is extinguished upon conviction, there is no inherent constitutional right to parole (Greenholtz v Nebraska Penal Inmates, 442 US 1). The court recognized, however, as do we, that when a State adopts a sentencing scheme which creates a legitimate expectation of early release from prison, *74 there then exists a liberty interest deserving of constitutional protection (id., at p 12).
The distinction lies in whether the statute admits of only the bare possibility that parole will be granted or affirmatively promises that parole will be extended to the inmate in the absence of prohibitive findings or circumstances (see Greenholtz v Nebraska Penal Inmates, supra, at pp 9-12). It is premised in part on Judge Henry Friendly’s insightful comment that, " 'there is a human difference between losing what one has and not getting what one wants’ ” (Friendly, Some Kind of Hearing, 123 U of Pa L Rev, 1267, 1296, cited at 442 US, at p 10, supra), and upon the realization that a legislative promise of parole, albeit conditional, encourages justifiable reliance upon its terms. Our task, then, is to examine New York’s sentencing provisions to determine whether a convicted person has a legitimate expectation that he will be considered for parole at or before the time he has served one third of his maximum sentence or at least at some time before his full sentence is served.
As the Appellate Division noted (69 AD2d, at p 522), under the former Correction Law provisions the sentencing Judge was subject to the same one-third limit that he is now, but power in a Parole Board panel to exceed that limit was implied from the requirement of automatic administrative review by the entire Parole Board of the panel’s decision (People ex rel. Johnson v Montanye, 42 AD2d 1041; cf. Hunter v Fogg, 616 F2d 55; Walker v Oswald, 449 F2d 481, 484). From the absence of that automatic review provision the Appellate Division inferred that the Parole Board is now subject to the same limitation as is a Judge. We do not believe that inference can be drawn.
The bill which Governor Carey signed into law in 1977 was designed to broaden the Parole Board’s discretion in fixing minimum sentences, while structuring the exercise of that discretion by requiring the board to adopt guidelines to regulate its operations. In approving the bill, the Governor stated (NY Legis Ann, 1977, p 319): "By removing needless statutory restraints on the Board's power to ñx minimum sentences, the bill enables the fixing of realistic minimum sentences which take into account the gravity of the offense and the offender’s past criminal history, among other factors. Concomitantly, it permits a reasonable expectation of parole when a minimum *75 sentence, fixed in accordance with the guidelines, has been served, provided the inmate fulfills the requirements of statute.” (Emphasis added.)
The new legislation directs in section 259-i (subd 1, pars [a], [b]) of the Executive Law that where a court fails to impose an MPI, the Parole Board shall do so in accordance with its promulgated guidelines, or shall issue a written explanation of its reasons for departing from the guidelines. The law contains no restriction limiting the Parole Board to an MPI which a court could have imposed or requiring that the board establish an MPI of less than the full sentence. Since the purpose of the law, as stated by the Governor, was to remove needless statutory restraints on the board’s power to fix MPI’s, and there is provision in subdivision 4 of section 259-i for appeal and paragraph (a) of subdivision 1 of the same section authorizes the board to provide by rule for subsequent reduction of the minimum originally fixed, we do not find the inference drawn by the Appellate Division reading such restrictions into the new legislation to be reasonable.
We conclude that New York has given no guarantee to a convicted defendant that he will be considered for parole at the end of one third of his maximum sentence or at any particular time. That the sentencing court refrains from imposing an MPI is not a promise by the State that it will not be fixed at more than one third of the sentence or that it will be fixed at less than the maximum term. What the New York statute promises, simply put, is that guidelines shall be established and followed unless reasons are given for not following them. That guidelines are provided does not mean they cannot be deviated from or create an entitlement to release at any particular time; the system is thus discretionary and holds out no more than the possibility of parole (Greenholtz v Nebraska Penal Inmates, 442 US 1, 9-12, supra; Boothe v Hammock, 605 F2d 661, 663, 664; Walker v Oswald, 449 F2d 481, 485, supra). The fact that section 259-i (subd 1, par [a]) of the Executive Law does not, as did the prior provision, require automatic reconsideration at any particular interval and that the board has not yet adopted a rule for subsequent determinations reducing the minimum period originally fixed as the subdivision authorizes, does not affect the constitutionality of the statutory scheme, which holds out no more than the possibility of parole and does not treat like situated persons differently (cf. Walker v Oswald, supra, at p 484). That being so, *76 petitioner has demonstrated no protected liberty interest which would implicate the due process guarantee (see Greenholtz v Nebraska Penal Inmates, supra).[5]
For the same reasons, petitioner’s argument that the board’s decision fixing his MPI at four years does violence to the legislative scheme is equally unfounded. What the statutory scheme contemplates is not a guarantee of parole at any given time or at all but a guarantee that in fixing the minimum time that must expire before consideration will be given to parole, guidelines be followed by the board or the reasons for not following them will be stated. The fact that the court may not fix a minimum exceeding one third because, as the Commission Staff Notes suggests (CLS, Statutes, vol 23, p 182), the minimum and maximum should not be "so close together as to deprive the Board of Parole of an adequate opportunity to supervise the prisoner for a reasonable period” has no bearing on where the board itself, which has or can have continuing supervision of the prisoner, can fix the maximum. It is enough under the statute that, when fixing the minimum or the maximum, the board articulate its reasons for doing so, as was done here.
It is argued for petitioner that the purpose of the sentencing Judge in refraining from imposition of a minimum sentence was to make it possible for petitioner to be paroled before one third of his maximum sentence had elapsed, not after. Whether the sentencing Judge contemplated that the sentence imposed would leave the defendant vulnerable to a greater than one-third minimum is simply irrelevant. As the Supreme Court has recently stated, referring to the Federal parole system, in United States v Addonizio (442 US 178, 190): "The import of this statutory scheme is clear: the judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term. The judge may well have expectations as to when release is likely. But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met. To require the Parole Commission to act in accordance with *77 judicial expectations, * * * would substantially undermine the congressional decision to entrust release determinations to the Commission and not the courts.” To be sure, the context of Addonizio was somewhat different. The assumption by the sentencing court in Addonizio that the parole commission would ignore the severity of the crime and base its decision solely on the inmate’s prison conduct and his potential for rehabilitation furnished no basis for the court to override the commission’s decision. But while under our statute a court may initially set an MPI, the ultimate determination whether to release a convict is for the Parole Board. Where a court leaves that function to the Parole Board in the first instance it can have no enforcible expectation that its notion of leniency will be adopted.
Finally, we reject petitioner’s contention that the board acted arbitrarily in setting his MPI at four years. In light of the board’s expertise and the fact that responsibility for a difficult and complex function has been committed to it, there would have to be a showing of irrationality bordering on impropriety before intervention would be warranted. No such showing has been made here.[6]
For the foregoing reasons, the order of the Appellate Division should be reversed, without costs, and the determination of the Board of Parole reinstated.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, etc.

. The Appellate Divisions that have ruled on the issue are in disagreement, the Second Department in the instant case having answered the question in the negative (69 AD2d 520), but the Third and Fourth Departments having answered it in the affirmative (Matter of Rodriquez v New York State Board of Parole, 72 AD2d 655; Matter of Grossman v Parole Bd. of State of N Y., 74 AD2d 727).

. A court is not required to fix an MPI unless the conviction is for a class A felony, and it cannot set an MPI if the conviction is for a class E felony. If the. conviction is for a class B, C or D felony, the court may fix an MPI if justice so requires, or it may choose not to, in which event the MPI is fixed by the Board of Parole (see Penal Law, § 70.00, subd 3; Executive Law, § 259-i, subd 1, par [a]).

. (See Executive Law, § 259-c, subd 4; and § 259-i, subd 1, par [a].)

. The notice stated: "MPI based upon the serious nature of the instant offense— Grim. Solicitation 1st Deg., during which you solicited an undercover police officer to murder your father-in-law for $10,000.”

. Nor is it implicated by the Legislature’s declaration in section 1 of the amendatory statute (L 1977, ch 904) that "the exercise of discretion, which is inherent in the parole system, must be structured and administered consistent with notions of due process.” As the remainder of that declaration makes clear, that reference is to procedural due process rather than to substantive limitations.

. Certainly the fact that Russo will be entitled to unconditional release for good behavior after two years and eight months is not such a showing. The two systems have differing purposes.