OPINION OF THE COURT
Joseph Jiudice, J.
In this CPLR article 78 proceeding, this court is presented with a case of first impression.
On December 17, 1971, the petitioner was sentenced in Supreme Court, Kings County, to an indeterminate term not to exceed 25 years after having been convicted of attempted murder, second degree, and other related offenses.
On June 2,1972, the petitioner was sentenced in United States District Court, District of New Jersey, to indeterminate terms totaling 16 years for Federal crimes.
Pursuant to his New York State sentence, he was committed to the custody of the Department of Correctional Services, and after parole denial in 1976, the petitioner was rescheduled for a parole release hearing in May of 1978.
On May 25, 1978, the petitioner was granted parole by the Board of Parole effective June 30, 1978 to the Federal sentence detainer. He was, in fact, paroled on June 30, 1978, whereupon he was delivered into the custody of the *578 Federal prison system to serve his Federal sentence, as aforesaid, at the Federal prison in Lewisburg, Pennsylvania.
Approximately three weeks prior to May 25, 1978 (the date upon which petitioner was granted parole), he was taken from Green Haven Correctional Facility with another inmate for a dental visit to Newburgh, New York, accompanied by two officers. During this excursion, certain events transpired which led to the escape of the other inmate. More than two years passed after the petitioner had been released on parole to the Federal sentence detainer. He was serving his Federal sentence and in July, 1980, the New York State Commission of Investigations issued an interim report on the escape of the inmate, as aforesaid. The report accused this petitioner of not only assisting in the coverup by the corrections officer relative to the escape, but also accused the petitioner of obtaining parole under fraudulent pretenses.
Thereafter, the petitioner was notified by letter from respondent Board of Parole that “the parole granted to you effective June 30th, 1978, by the New York State Board of Parole shall be temporarily rescinded pending a hearing regarding charges brought against you”. Accompanying the letter was a notice of rescission hearing setting forth four charges. No scheduled date of hearing was given. On the same day, to wit, July 24, 1980, a letter was sent from the respondent Board of Parole to the Warden at Lewisburg Penitentiary advising him that the board had decided to rescind the parole granted to petitioner on June 30, 1978.
Thereafter, the Department of Correctional Services likewise notified the prison authorities at Lewisburg that the petitioner’s New York State parole had been rescinded.
Article 12-B of the Executive Law (signed into law in 1977), was designed hot only to enhance the operation of the State Board of Parole, but was to generally broaden the Parole Board’s power and discretion in certain areas. The rules and regulations of the Division of Parole, 9 NYCRR 8000 et seq., adopted pursuant to the authority vested in the board by article 12-B, as aforesaid, set forth the general *579 authority of the Division of Parole as to its responsibility in certain areas such as minimum periods of imprisonment, and the parole revocation process.
The codified rules and regulations gave to the Division of Parole the power to promulgate rules and regulations in establishing and maintaining guidelines in making parole decisions as required by law.
Since the passage of article 12-B of the Executive Law, the courts of this State have recognized the broadened power of the Parole Board to act in certain areas and have recognized that the Parole Board has a wide latitude of discretion in making determinations required by law (see, e.g., Matter of Russo v New York State Bd. of Parole, 50 NY2d 69).
It cannot be argued that the Parole Board has the absolute power to revoke parole upon complying with the rules and regulations set forth in 9 NYCRR Parts 8004 and 8005, and upon complying with the guidelines set forth by the United States Supreme Court in Morrissey v Brewer (408 US 471).
This court’s research of decisional law both before and after the effective date of article 12-B of the Executive Law and the rules and regulations promulgated thereunder, reveals no case where the right of a Parole Board to rescind parole subsequent to its date of effectiveness has either been recognized or upheld.
The respondents urge that the Parole Board has been delegated by the State Legislature to grant and revoke parole so long as statutory standards are met. The respondents further urge that the Parole Board has promulgated rules and regulations providing for “modification and revocation” of any of its decisions and that the statute and rules and regulations granting this power carry with it the implied power to do anything necessary to implement the authority given to it.
Were this the case, the Parole Board would have unlimited discretion in arriving at and making its decisions. Recognizing the broad discretionary authority of the Parole Board under the Executive Law, this court does not believe, however, that the Legislature intended to vest the *580 Parole Board with unlimited and unchecked discretionary authority. A contrary view would be tantamount to divesting this court of the power given to it under CPLR article 78 to review a Parole Board decision to determine whether the same was an abuse of discretion and arbitrary and capricious.
The respondents’ reliance on the Court of Appeals decision in People ex rel. Spinks v Harris (53 NY2d 784, 785) is misplaced. The court, in granting the petitioner’s writ of habeas corpus, ordered his immediate release, and indicated that its determination was without prejudice to the respondent to “institute such proceedings or take such other action to correct the alleged error, as they may be advised” (see 9 NYCRR 8003.1). The respondents interpret this language as giving the Parole Board authority to rescind parole. This court disagrees with the respondents’ interpretation of the Court of Appeals decision. Spinks had been paroled following a clerical error in computing his minimum term with the result that his parole release was a nullity. In the instant case, the petitioner was legally eligible for parole so that the act of releasing him was not a nullity.
While the Board of Parole has specific authority to revoke parole based upon the happening of certain events such as a parolee failing to comply with the terms of his release, and after due process considerations, a clear reading of the parole statutes indicates an absence of authority to rescind a parole grant that has been finalized and in effect, at least within the context of the facts in the instant case.
This court does not determine the issue as to whether the Board of Parole has the power to rescind parole after a due process hearing, nor does it determine the issue of the Parole Board’s power to rescind parole subsequent to parole grant but before parole release based upon misconduct occurring in the institution.
This decision is based solely on the very specific facts of the instant case.
Accordingly, the decision of the New York State Board of Parole rescinding the petitioner’s parole effective June 30, *581 1978, is vacated and set aside and the respondents’ detainer presently lodged against the petitioner is hereby vacated.