MYRNA TARTER, Appellant, v STATE OF NEW YORK, Respondent.

First Department, January 21, 1986

APPEARANCES OF COUNSEL

*John P. D'Ambrosio, P. C.,* for appellant.

*Calvin M. Berger* of counsel *(Peter J. Dooley* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for respondent.

### OPINION OF THE COURT

KASSAL, J.

On March 16, 1984, 46-year-old Myrna Tarter, a receptionist in a midtown Manhattan law firm, was shot by Michael Montgomery in the vestibule of her apartment building at 434 East 89th Street. As a result, claimant Tarter was rendered a paraplegic. The shooting occurred less than two months after Montgomery had been paroled from a State prison on January 25, 1984. He had committed an almost identical crime four years earlier and was convicted in Westchester County on January 30, 1981, of attempted manslaughter in the first degree and criminal possession of a weapon in the second degree. Montgomery was sentenced to concurrent terms of 4 to 12 years and was released on parole after serving the minimum term.

On May 24, 1984, claimant filed a notice of intention to file a claim and, thereafter, on November 2, 1984, filed a claim,

charging negligence by State parole authorities in failing to (1) act in accordance with law in paroling Montgomery; (2) supervise him in accordance with the terms of his parole; (3) obtain and file complete information; (4) condition his parole; (5) investigate violations of parole while he was on parole; and, (6) revoke the parole. It is also alleged that, at Montgomery's first trial, there was proof that he was a severe alcohol abuser, had deep-seated psychiatric problems and that the parole authorities did not take these factors into account.

The State moved to dismiss the claim, contending that it was untimely, failed to set forth sufficient factual allegations and did not state a cause of action in that sovereign immunity insulated the State from liability for discretionary acts relating to the decision to parole Montgomery. In opposition to the motion, claimant cross-moved for discovery, contending that, in view of the confidentiality of Parole Board records, it could not be ascertained without disclosure whether parole authorities had taken into account all of the factors and criteria to be considered under the statutory standard provided for in Executive Law § 259-i. It was argued that the Parole Board did not take into consideration the recommendations of the sentencing court or the District Attorney and did not adhere to its own guidelines, as required. Therefore, the decision to parole Montgomery was not "in accordance with law" (Executive Law § 259-i [5]) and, as a result, is subject to review. Further, taking into account the secrecy associated with Parole Board determinations, which has prevented her from securing any information as to whether the statutory criteria and guidelines were followed, the notice of claim was factually sufficient to apprise the State of the nature of and basis for the claim for investigatory purposes.

■ The Court of Claims, concluding that there were insufficient factual allegations, dismissed with leave to file an amended claim within 90 days. We disagree.

The situation here is unlike that in *Welch v State of New York* (74 AD2d 661), where there was no allegation that the Parole Board failed to act "according to law". The claim in that case did not state the terms and conditions of the parolee's release nor any facts as to the manner in which the State was negligent. Accordingly, the Appellate Division, Third Department, dismissed the claim, with leave to file an amended claim, concluding (p 662) that "[t]he negligence of the State cannot be presumed from the fact of the assault

*(Taylor v State of New York,* [36 AD2d 878, *supra]).'' (See also, Brownshield v State of New York,* 76 AD2d 849.)

Unlike those cases, the claim here expressly alleged that the decision by the Parole Board did not follow the statutory criteria and the Board's own guidelines and was not "in accordance with law" (Executive Law § 259-i [5]). We find the claim to be factually sufficient and, in doing so, take into account the fact that, inasmuch as the records of the Parole Board have not been disclosed and no information has been made available, claimant is presently unable to state with any specificity how Montgomery's release deviated from the statutory standard and the guidelines.

█ Preaction discovery under CPLR 3102 (c) is not available to determine if a cause of action in fact exists. On such an application, it is incumbent upon the petitioner to present "facts fairly indicating a cause of action against the adverse party" *(Matter of Schenley Indus. v Allen,* 25 AD2d 742, 743; *see also, Stewart v Socony Vacuum Oil Co.,* 3 AD2d 582; *Newell v Makhuli,* 50 AD2d 1060). Discovery will not be permitted where the plaintiff has sufficient information to frame a complaint *(Matter of Simpson [Traum],* 63 AD2d 583, 584; *New Rochelle Precision Grinding Corp. v Marino,* 9 AD2d 685) or where it is sought to determine whether facts supporting a cause of action actually exist *(Matter of Heller v State of New York,* 57 Misc 2d 976). Under the circumstances, we find the claim sufficiently specific and in "substantial compliance" with Court of Claims Act § 11. As was held in *Heisler v State of New York* (78 AD2d 767): "What is required is not absolute exactness, but simply a statement made with sufficient definiteness to enable the State to be able to investigate the claim promptly and to ascertain its liability under the circumstances. The statement must be specific enough so as not to mislead, deceive or prejudice the rights of the State."

█ We also disagree with the State's assertion that it has absolute immunity from suit with respect to the decision to release a prisoner after serving the minimum sentence *(see, Tyner v State of New York,* 116 AD2d —). In *Tyner,* decided simultaneously herewith, a claim against the State and its Parole Board was filed by claimant, who had been shot on July 25, 1982 by Leslie Pastrana, two months after Pastrana's release on parole. Pastrana had previously been convicted of attempted second degree burglary on October 7, 1981 and was sentenced to a term of 1 to 3 years. In connection with the prior crime, it was disclosed that Pastrana had attacked a

police officer with a knife. He was paroled after serving the minimum sentence and shot Tyner while the latter was seated in his vehicle, waiting for a red light to change at the corner of Third Avenue and 109th Street, in New York City. Tyner, who was rendered a paraplegic as a result of the shooting, claimed that, in releasing Pastrana, the Parole Board failed to adhere to the statute and its own guidelines. It was alleged that Pastrana had a long history of drug and alcohol abuse and, after parole, he was found in possession of a hypodermic needle, for which he was subsequently convicted. It was contended that, considering Pastrana's violent criminal record, psychological disorder and propensity toward crime, adherence to the Parole Board's own guidelines would have required that he remain in prison for at least 18 months, instead of being released after serving the minimum term.

In *Tyner,* the Court of Claims granted permission to file a late claim, holding that, in order for the Parole Board determination to be immune from judicial review, its decision must be in accordance with statutory requirements and, based on the claim that there was a deviation from the guidelines, the Board had not acted "in accordance with law" (Executive Law § 259-i [5]). Thus, there was reasonable basis to believe a valid cause of action existed. We affirmed the court's finding that the claim "appears to be meritorious", within the standard provided in Court of Claims Act § 10 (6).

Generally, absolute immunity attaches when the official State action complained of involves the exercise of discretion and is not ministerial *(Tango v Tulevech,* 61 NY2d 34, 40; *Weiss v Fote,* 7 NY2d 579). In *Tango v Tulevech (supra)* the Court of Appeals held that the decision of a probation officer in refusing plaintiff's request to deny plaintiff's former wife permission to take her children out of the State, in violation of their custody agreement, amounted to a discretionary exercise of judgment, for which the State was absolutely immune from suit. In doing so, the court distinguished between discretionary and ministerial acts as follows: "discretionary or quasi-judicial acts involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result" (61 NY2d, at p 41).

With respect to the decision by the Parole Board to release a prisoner, the statute directs that certain factors and criteria be considered, mandates that the Parole Board follow guide-

lines established for that purpose (Executive Law § 259-i [1], [2]) and provides that any determination is deemed "a judicial function and shall not be reviewable *if done in accordance with law"* (Executive Law § 259-i [5]; emphasis added). In both this case and in *Tyner (supra)* it is alleged that the Parole Board failed to adhere to the statute and its own guidelines, which, if followed, would have required denial of parole, and the decision was not a discretionary or quasi-judicial act upon which absolute immunity would be conferred. Applying the *Tango* standard, the decision here as to parole did not involve "the exercise of reasoned judgment which could typically produce different acceptable results" *(Tango v Tulevech,* 61 NY2d, at p 41). Instead, since it is alleged that adherence to the statute and guidelines would have compelled a contrary result, under the *Tango* standard, the decision amounted to a ministerial act—"direct adherence to a governing rule or standard with a compulsory result" *(supra,* p 41).

The reported decisions have accorded to Parole Boards limited immunity from claims by persons injured by a parolee *(see, Brownshield v State of New York,* 76 AD2d 849, *supra; Taylor v State of New York,* 36 AD2d 878, *supra; Welch v State of New York,* 74 AD2d 661, *supra).* The crucial inquiry in such a case is whether the action of the Parole Board in releasing the prisoner was "in accordance with law" (Executive Law § 259-i [5]) and, if so, the decision is deemed a judicial function and is not reviewable. In *Matter of Hines v State Bd. of Parole* (293 NY 254, 257) it was held: "The statutes declare that the action of the Board in releasing or refusing to release prisoners shall not be reviewable if in accordance with law. Thus so long as the Board violates no positive statutory requirement, its discretion is absolute and beyond review in the courts."

Similarly, in *Matter of Russo v New York State Bd. of Parole* (50 NY2d 69) the Court of Appeals upheld the power of the Parole Board to impose a minimum sentence greater than that which could have been judicially imposed in a case where the court, in sentencing a defendant, fixed a maximum but no minimum sentence. In such case, the statute (Executive Law § 259-i [1]) requires the Parole Board to determine a minimum period of imprisonment after an interview to be held within 120 days from the date the person comes within the jurisdiction of the Department of Correctional Services, and directs that the decision be based upon certain statutory criteria and established guidelines. The Court of Appeals held that once a

determination was reached in fixing a minimum period of incarceration, "there would have to be a showing of irrationality bordering on impropriety before intervention would be warranted" (50 NY2d, at p 77).

As applied here, it is urged that the Board's failure, consistent with its duty, to take into account and apply the standards and criteria provided for in the statute and the guidelines was improper and reviewable, since it was not "in accordance with law". *Santangelo v State of New York* (101 AD2d 20) does not require a different result. In that case, claimant had been assaulted and raped by a 16 year old who had been released on unsupervised furlough from a minimum security facility. The Appellate Division, Fourth Department, affirmed the dismissal of the claim holding that the determinations of the temporary release committee and the superintendent of the correctional facility were discretionary and quasi-judicial in nature. However, in concluding that the State was immune from suit, the *Tango* standard was applied. The decision to release the youthful offender on unsupervised furlough, pursuant to Correction Law article 26, was found to be "inherently discretionary" (101 AD2d, at p 26), requiring the "exercise [of] reasoned judgment in balancing the welfare of the applicant and the possible risks to the community in deciding whether to grant or deny temporary release and, if it is granted, in devising an appropriate plan" *(supra,* at p 29).

The situation in *Santangelo (supra),* however, differs from the release on parole at issue in both this case and in *Tyner.* A distinguishing factor is that the Parole Board is not vested with complete and unfettered discretion in that it is required to apply legislatively imposed criteria and standards contained in established guidelines. In *Santangelo,* the court took cognizance of the fact that not all actions involving some exercise of discretion are entitled to complete and absolute immunity (101 AD2d, at p 24). Decisions in the Second and Third Departments have accorded limited immunity to Parole Boards with respect to claims by persons injured by a parolee *(Brownshield v State of New York, supra; Taylor v State of New York, supra; Welch v State of New York, supra).* It has been recognized, however, that "[e]ach case must be decided on the circumstances involved, the nature of the duty, the degree of responsibility resting on the officer, and his position in the municipality's table of organization." *(Rottkamp v Young,* 21 AD2d 373, 376, *affd* 15 NY2d 831; *see also, Tango v Tulevech, supra,* at p 40.)

In our case, as noted, the Parole Board is not accorded unlimited discretion but must base its determination upon adherence to legislatively imposed standards and guidelines established for that purpose. In that connection, it is alleged that proper application by the Parole Board of such standards in its decision to parole Montgomery would have resulted in his not being released. Thus, as claimed, his parole was not "in accordance with law" and, therefore, the decision is not beyond the scope of judicial review under the limited immunity to be accorded to parole decisions.

Accordingly, the order, Court of Claims (Albert A. Blinder, J.), entered April 2, 1985, which granted defendant's motion to dismiss unless claimaint filed an amended claim within 90 days and denied claimant's cross motion for discovery and depositions, should be modified, on the law, to deny the motion to dismiss and to reinstate the claim, and otherwise affirmed, without costs or disbursements.

KUPFERMAN, J.P., ROSS, ASCH and FEIN, JJ., concur.

Order, Court of Claims of the State of New York, entered on April 2, 1985, unanimously modified, on the law, to deny the motion to dismiss and to reinstate the claim, and otherwise affirmed, without costs and without disbursements.