*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  July 24, 2014                    518301
_____

In the Matter of SAMUEL
    HAMILTON,
                    Appellant,

        v                                    MEMORANDUM AND ORDER

NEW YORK STATE DIVISION OF
    PAROLE et al.,
                    Respondents.
_____

Calendar Date:   June 3, 2014

Before:   Peters, P.J., Garry, Rose, Egan Jr. and Clark, JJ.

                        _____


        Paul, Weiss, Rifkind, Wharton & Garrison, LLP, New York
City (Christopher L. Filburn of counsel), for appellant.

        Eric T. Schneiderman, Attorney General, Albany (Kathleen M.
Arnold of counsel), for respondents.

                        _____


Clark, J.

        Appeal from a judgment of the Supreme Court (Devine, J.),
entered November 14, 2013 in Albany County, which dismissed
petitioner's application, in a proceeding pursuant to CPLR
article 78, to review a determination of the Board of Parole
denying petitioner's request for parole release.

        Petitioner has served approximately 30 years on an
aggregate sentence of 18 years to life in prison for his
conviction of murder in the second degree and robbery in the
first degree.  The convictions stemmed from a February 1982
incident in which an off-duty police officer was killed by
petitioner's accomplice during an attempted robbery.  Petitioner

made his latest of numerous appearances before the Board of Parole in August 2012, and his request for release was denied. He was ordered to be held an additional 24 months. After the Division of Parole failed to timely respond to his administrative appeal, petitioner commenced this CPLR article 78 proceeding. Supreme Court dismissed the petition, and petitioner now appeals.

We affirm. The procedures governing parole are set forth in Executive Law article 12-B. Executive Law § 259-i (5) dictates the scope of our review, providing that "[a]ny action by the [B]oard or by a hearing officer pursuant to this article shall be deemed a judicial function and shall not be reviewable if done in accordance with law." The Court of Appeals has long interpreted that language — in both current and prior statutes — to mean that "so long as the Board violates no positive statutory requirement, its discretion is absolute and beyond review in the courts" (Matter of Hines v State Bd. of Parole, 293 NY 254, 257 [1944]; see Matter of Silmon v Travis, 95 NY2d 470, 476-478 [2000]). In New York, it is "the . . . Board [that] holds the power to decide whether to release a sentenced prisoner on parole" (Matter of Silmon v Travis, 95 NY2d at 476). As the Court of Appeals has explained, "[t]o require the [Board] to act in accordance with judicial expectations . . . would substantially undermine the [legislative] decision to entrust release determinations to the [Board] and not the courts" (Matter of Russo v New York State Bd. of Parole, 50 NY2d 69, 76-77 [1980] [internal quotation marks omitted]). Absent failure by the Board to comply with the mandates of Executive Law article 12-B, "[j]udicial intervention is warranted only when there is a 'showing of irrationality bordering on impropriety'" (Matter of Silmon v Travis, 95 NY2d at 476, quoting Matter of Russo v New York State Bd. of Parole, 50 NY2d at 77; see Matter of Valderrama v Travis, 19 AD3d 904, 905 [2005]). Thus, as the Court of Appeals further stated in Silmon, "we review whether the Board's decision to deny parole was arbitrary or capricious" (Matter of Silmon v Travis, 95 NY2d at 476).[1]

_____

[1] In all CPLR article 78 proceedings to review determinations that are not made after a quasi-judicial hearing mandated by law, including this one, "the proper standard for

Executive Law article 12-B mandates that "[d]iscretionary release on parole shall not be granted merely as a reward for good conduct" (Executive Law § 259-i [2] [c] [A]).  Rather, the Board must consider whether "there is a reasonable probability that, if such inmate is released, he [or she] will live and remain at liberty without violating the law, and that his [or her] release is not incompatible with the welfare of society and will not so deprecate the seriousness of his [or her] crime as to undermine respect for law" (Executive Law § 259-i [2] [c] [A]).  The decision to grant parole release is discretionary, but the Board is required to consider certain guidelines in making its determination (see Matter of Silmon v Travis, 95 NY2d at 477).  Those guidelines include the inmate's institutional record (goals and accomplishments, academic achievement, vocational education, training and work assignments, therapy and interaction with staff), release plans, statements by the crime victim, the seriousness of the offense considering type and length of

---

judicial review . . . is whether the Board's determination was arbitrary and capricious or an abuse of discretion (see CPLR 7803 [3])" (Matter of Beck-Nichols v Bianco, 20 NY3d 540, 559 [2013]; see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]).  "Arbitrary action is without sound basis in reason and is generally taken without regard to the facts"; or, put differently, "[r]ationality is what is reviewed under . . . the arbitrary and capricious standard" (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d at 231 [emphasis added]).  Contrary to the dissenters' views, our application of the arbitrary and capricious — that is, rationality — standard of judicial review amounts to neither an "assert[ion] that this clearly extraordinary case is not susceptible to reversal upon judicial review" (infra at 18 [Garry, J., dissenting]) or "simply ratifying decisions made by the Board so long as it adheres to the statutory mandates" (infra at 14 [Peters, P.J., dissenting]).  Rather, in our view, the Board's determination evinces a clearly reasoned basis that finds foundation in the facts of this matter and, therefore, is not irrational bordering on impropriety, as explained below.

sentence, recommendations of the sentencing court and district attorney, the presentence probation report, mitigating or aggravating factors to the crime, activities following arrest prior to confinement, and prior criminal record (Executive Law § 259-i [2] [c] [A] [i], [iii], [v], [vii], [viii]).

While the Board is required to detail the reasons for a denial of discretionary release (see Executive Law § 259-i [2] [a] [i]), the Court of Appeals has ruled that the "Board need not expressly discuss each of these guidelines in its determination" (Matter of King v New York State Div. of Parole, 83 NY2d 788, 791 [1994]), and we are bound by that ruling. The Court of Appeals has also explained that "the statutory scheme is such that no judicial review of the merits in any case is possible" (Matter of Hines v State Bd. of Parole, 293 NY at 257 [emphasis added]).[2] These principles, which are derived from the statute itself, underlie our limited and deferential review of the Board's decisions. Consistent with them, we have ruled that "our role is not to assess whether the Board gave the proper weight to the relevant factors" in reviewing the Board's determination that the violent nature of the crimes for which petitioner was convicted outweighed his exemplary institutional behavior and extensive evidence of rehabilitation (Matter of Comfort v New York State Div. of Parole, 68 AD3d 1295, 1296 [2009]). In that case, we explained that, although we review the Board's ultimate determination on a standard of "irrationality bordering on impropriety" (Matter of Comfort v New York State Div. of Parole, 68 AD3d at 1297 [internal quotation marks and citations omitted]), we cannot "effectively review the Board's weighing process, given that it is not required to state each factor that it considers, weigh each factor equally or grant parole as a

_____

[2] Again, our acknowledgment that this case is not subject to review on the merits does not imply that we are "abdicat[ing] our critical judicial function" (infra at 18 [Garry, J., dissenting]). Rather, it is a recognition of the distinction between de novo review on the merits, and the "extremely deferential[, . . .] proper standard for judicial review in these cases" — whether the Board's determination was arbitrary and capricious (Matter of Beck-Nichols v Bianco, 20 NY3d at 559).

reward for exemplary institutional behavior" (id. at 1296 [emphasis added]).

In that regard, the Court of Appeals has held that the Board rationally denied parole release to a petitioner — who "was a productive citizen and model prisoner [and] who enthusiastically engaged in educational and vocational programs, taught other prisoners and wrote about prison life" — based upon the brutality of his crime and his continuing to maintain his innocence of that crime (Matter of Silmon v Travis, 95 NY2d at 477). Similarly, this Court has repeatedly held — both recently and historically — that, so long as the Board considers the factors enumerated in the statute, it is "entitled . . . to place a greater emphasis on the gravity of [the] crime" (Matter of Montane v Evans, 116 AD3d 197, 203 [2014], lv granted 23 NY3d 903 [2014] [internal quotation marks and citation omitted]; see Matter of Williams v New York State Div. of Parole, 114 AD3d 992, 992-993 [2014]; Matter of Lashway v Evans, 110 AD3d 1417, 1418 [2013]; Matter of McCaskell v Evans, 108 AD3d 926, 927 [2013]; Matter of Viglotti v State of N.Y. Exec. Div. of Parole, 98 AD3d 789, 790 [2012], lv dismissed 20 NY3d 1034 [2013]; Matter of Gonzalez v Chair, N.Y. State Bd. of Parole, 72 AD3d 1368, 1369 [2010]; Matter of Lue-Shing v Pataki, 301 AD2d 827, 828 [2003], lv denied 99 NY2d 511 [2003]; People ex rel. McCormack v New York State Bd. of Parole, 244 AD2d 673, 673 [1997]; Matter of Walker v New York State Div. of Parole, 203 AD2d 757, 758-759 [1994]; Matter of Ittig v New York State Bd. of Parole, 59 AD2d 972 [1977], lv denied 43 NY2d 648 [1978]; but see Matter of King v New York State Div. of Parole, 190 AD2d 423, 434 [1993], affd on other grounds 83 NY2d 788 [1994] [a First Department case holding, in conflict with our precedent, that the Board may not deny discretionary release based solely on the nature of the crime when the remaining statutory factors are considered only to be dismissed as not outweighing the seriousness of the crime]).

Particularly relevant here, we have held that, even when a petitioner's institutional behavior and accomplishments are "exemplary," the Board may place "particular emphasis" on the violent nature or gravity of the crime in denying parole, as long as the relevant statutory factors are considered (Matter of

Valderrama v Travis, 19 AD3d at 905).  In so holding, we explained that, despite petitioner's admirable educational and vocational accomplishments and positive prison disciplinary history, "[o]ur settled jurisprudence is that a parole determination made in accordance with the requirements of the statutory guidelines is not subject to further judicial review unless it is affected by irrationality bordering on impropriety" (id. [internal quotation marks and citations omitted]).  We emphasize that this Court has repeatedly reached the same result, on the same basis, when reviewing denials of parole to petitioners whom we recognized as having exemplary records and as being compelling candidates for release (see Matter of Comfort v New York State Div. of Parole, 68 AD3d at 1296-1297; Matter of Cruz v New York State Div. of Parole, 39 AD3d 1060, 1061-1062 [2007]; Matter of Guerin v New York State Div. of Parole, 276 AD2d 899, 900 [2000]; see also Matter of Garofolo v Dennison, 53 AD3d 734, 734-735 [2008]; Matter of Montalvo v New York State Bd. of Parole, 50 AD3d 1438, 1438-1439 [2008]; Matter of Sanchez v Dennison, 21 AD3d 1249, 1249-1250 [2005]; Matter of Mandala v Dennison, 20 AD3d 757, 757-758 [2005], lv denied 5 NY3d 714 [2005]; Matter of Rivera v Travis, 289 AD2d 829, 830 [2001]).

Evaluating the Board's written determination here in the context of the parole hearing transcript (see Matter of Siao-Pao v Dennison, 11 NY3d 777, 778 [2008]; Matter of Montane v Evans, 116 AD3d at 203 n 2), we conclude that the Board properly considered the necessary factors in denying petitioner's request for parole release and founded its determination upon the facts of this particular case.  Indeed, the record is replete with evidence that the Board reviewed, considered and discussed the relevant factors, as well as the facts of the underlying crime. Specifically, the Board explored in detail petitioner's rehabilitative efforts, educational and institutional achievements, release plans, COMPAS Risk and Needs Assessment instrument, lack of criminal history, evident remorse and insight, numerous letters of support, clean disciplinary record and the sentencing minutes, in addition to the seriousness of the crime and his initial failure to cooperate with law enforcement agents, which allowed his accomplices to escape conviction.  With respect to the seriousness of the crime, it is worth noting that — as the Board recognized — petitioner was convicted of murder

under the felony murder statute, under which, "[b]y operation of law, the intent necessary to sustain a murder conviction is inferred from the intent to commit a specific, serious, felonious act, even though the defendant, in truth, may not have intended to kill" (People v Stokes, 88 NY2d 618, 623 [1996]; see People v Cahill, 2 NY3d 14, 67 [2003]).  Thus, while the facts as set forth in the record strongly support petitioner's claim that he did not shoot the victim or intend to murder him, "in the eyes of the law, [he] brutally killed [a police officer]" (Matter of Silmon v Travis, 95 NY2d at 477-478).

In our view, the Board neither failed to comply with the requirements of the statutory guidelines nor engaged in irrationality bordering on impropriety.  This is not a case in which, for example, the Board irrationally concluded — in glaring contradiction with both the facts in the record and the normal limits of human capability, and without a sound basis in reason — that a nearly 90-year-old, terminally ill cancer patient with additional debilitating medical conditions that required continuous medical care had "a propensity for extreme violence" based solely on the nature of the crime (Matter of Friedgood v New York State Bd. of Parole, 22 AD3d 950, 951 [2005]).  Nor is this a case in which the Board "considered factors outside the scope of the applicable statute," such as penal philosophy and the historical treatment of murderers (Matter of King v New York State Div. of Parole, 83 NY2d at 791) or in which the hearing transcript suggests that the Board improperly imposed a "burden [on petitioner] to demonstrate that his release would somehow enhance society" (Matter of Prout v Dennison, 26 AD3d 540, 541 [2006]).  Rather, the record establishes that the Board acknowledged petitioner's extensive rehabilitative success along with the additional statutory factors, but placed greater emphasis on the seriousness of petitioner's crime in its determination that release would be incompatible with the welfare of society and so deprecate the seriousness of the crime as to undermine respect for the law, as it is "entitled" to do (Matter of Montane v Evans, 116 AD3d at 203).  We are thus constrained to affirm — to do otherwise is to implicitly overrule the decades of our well-settled jurisprudence set forth above (see e.g. Matter of Comfort v New York State Div. of Parole, 68 AD3d at 1296-1297; Matter of Cruz v New York State Div. of Parole, 39 AD3d at 1061-

1062; Matter of Valderrama v Travis, 19 AD3d at 905; Matter of Guerin v New York State Div. of Parole, 276 AD2d at 900).

That said, this Court is persuaded that petitioner's achievements during his incarceration have been extraordinary. Petitioner has, among other things, earned a Bachelor's degree from Nyack College and a Master's degree from New York Theological Seminary, participated in myriad programs through the prison system, and acted as a teacher and mentor to dozens of current and former inmates. Most notable are the numerous letters that petitioner submitted advocating for his release, including letters from the former Commissioner of Corrections and Community Supervision, the former Chair of the Division of Parole, and the Assistant District Attorney who prosecuted petitioner. In addition, the Superintendent of Fishkill Correctional Facility opined that he "would be fine having [petitioner] and his family as [his] neighbors," and 18 correction officers and other correction employees submitted letters further supporting petitioner's release. As one Board commissioner acknowledged — before voting against petitioner's release in a split decision — "anyone would be hard pressed to argue that [petitioner was not] rehabilitated."[3]

_____

[3] We interpret the same commissioner's frank acknowledgment that if petitioner was denied release, "the reason [he] would be held is because a police officer was murdered in the line of duty," as a recognition that petitioner would be released unless the Board determined that the seriousness of the crime outweighed the remaining statutory factors. Similarly, that commissioner's explanation that he found petitioner's description of the crime "difficult . . . to fathom" based upon his own experience does not amount to a misunderstanding of the facts of the crime or consideration of improper factors, as the dissenters assert. That commissioner's discussion of the facts of the crime as set forth in the record was accurate, and he conceded that "maybe [petitioner was] telling the truth," but nevertheless expressed his doubts about petitioner's "credibility," given that petitioner "could have resolved all of this" at the time of the incident, but instead "engaged in a pattern of lies from the outset about what happened." A petitioner's willingness to admit

Nevertheless, our view on whether petitioner is a "prime candidate for parole release" is not the relevant question before us (Matter of Cruz v New York State Div. of Parole, 39 AD3d at 1062). Petitioner's record, while compelling, provides no basis for overturning our settled precedent and for failing to apply the relevant decisions of the Court of Appeals; nor do the 2011 amendments to Executive Law article 12-B. As this Court has already concluded, those amendments did not "transform[] or otherwise alter[] the obligations of either the Board in articulating its determinations or this Court in reviewing such determinations" (Matter of Montane v Evans, 116 AD3d at 203-204 n 2). In short, the statutory language of Executive Law § 259-i (5) dictating our limited power of review and the interpretation of that language by the Court of Appeals remain unchanged. Accordingly, inasmuch as the Board has not violated the statutory mandates and its determination does not exhibit irrationality bordering on impropriety under either our precedent or that of the Court of Appeals, "its discretion is absolute and beyond review in the courts" (Matter of Hines v State Bd. of Parole, 293 NY at 257; see Matter of Silmon v Travis, 95 NY2d at 476-477).

Finally, we have previously considered and rejected petitioner's arguments that the 2011 amendments to Executive Law § 259-c (4) required the promulgation of formal rules or regulations (Matter of Montane v Evans, 116 AD3d at 202-203). Petitioner's remaining contentions have been either rendered academic by our decision or, upon consideration, found to be lacking in merit.

Rose, J., concurs.

---

to the facts of the crime and a consideration of the petitioner's activities following arrest and prior to confinement — here, the "pattern of lies" and petitioner's refusal to cooperate with law enforcement — are factors within the scope of the statute (see Executive Law § 259-i [2] [c] [A] [vii]; Matter of Silmon v Travis, 95 NY2d at 477-478).

Egan Jr., J. (concurring).

On February 11, 1982, James Carragher, an off-duty police officer, was walking home from work when he was accosted, robbed and murdered on a street in Brooklyn. Upon reviewing the extensive record before this Court, I fully agree with the majority that the determination rendered by the Board of Parole in this matter was neither arbitrary and capricious nor constituted an abuse of discretion, and I am similarly satisfied that, contrary to the view expressed by my dissenting colleagues, the Board's decision was not premised upon a misunderstanding of the relevant facts or the consideration of improper factors. Indeed, my analysis of the record leads me to conclude that the Board's decision to deny parole to petitioner under the circumstances presented here was entirely proper, and I write separately only to comment briefly upon the impact of petitioner's institutional record and the seriousness of the underlying offense.

As the majority aptly observes, parole is not a reward for good behavior in prison (see Executive Law § 259-i [2] [c] [A]; Matter of Silmon v Travis, 95 NY2d 470, 476 [2000]; Matter of Robles v Fischer, 117 AD3d 1558, 1559 [2014]; Matter of Mentor v New York State Div. of Parole, 87 AD3d 1245, 1246 [2011], lv denied 18 NY3d 803 [2012], cert denied ___ US ___, 132 S Ct 2437 [2012]), and although petitioner has made significant strides while incarcerated, his institutional record in no way alters the fact that he stands convicted of society's most heinous crime — the taking of a fellow human being's life. Similarly, the mere fact that certain of the statutory factors and guidelines (see Executive Law § 259-i [2] [c] [A] [i], [iii], [vii], [viii]) militate in petitioner's favor or that petitioner scored well on the COMPAS Risk and Needs Assessment instrument neither undermines nor negates the seriousness of his offense. In this regard, the prevailing case law — as extensively summarized by the majority — makes clear that, so long as the Board considers the relevant statutory factors, it is free to place "particular emphasis" on the gravity of the underlying crime (Matter of Valderrama v Travis, 19 AD3d 904, 905 [2005]). As I am satisfied that the Board indeed gave appropriate consideration to all of the relevant statutory factors and, further, did not abuse its

discretion in emphasizing the nature of petitioner's crime in denying his request for parole, I discern no basis upon which to disturb the Board's determination.


Peters, P.J. (dissenting).

Over 30 years ago, petitioner was sentenced to 18 years to life in prison for his role in the crimes that led to the death of an off-duty police officer. He remains behind bars, having been denied parole seven times during that period, the most recent of which — decided by a two-to-one vote of the Board of Parole — is now before us. The majority has concluded that the Board's decision to deny parole to petitioner during this latest appearance did not exhibit "'irrationality bordering on impropriety'" (Matter of Silmon v Travis, 95 NY2d 470, 476 [2000], quoting Matter of Russo v New York State Bd. of Parole, 50 NY2d 69, 77 [1980]). I respectfully disagree.

In my view, the Board's decision was based upon significant errors of fact and the consideration of improper factors. As the parole hearing minutes reveal, the Board's decision was made by the closest of margins (two commissioners voted to deny parole and one dissented), such that any error should be considered relevant to the determination. In that regard, one of the commissioners who voted against petitioner's release acknowledged that "anyone would be hard pressed to argue that [petitioner is] not . . . rehabilitated," but professed his belief that petitioner's achievements were contrasted by his "conduct in shooting this officer." This commissioner further articulated his belief that petitioner might have been the one to pull the trigger by opining that it was "difficult for [him] to fathom how if the man with the gun is the one who's right on top of this officer stealing his property, how [petitioner got] shot and [petitioner's coconspirator did not] get shot." Yet, petitioner was not the shooter. In fact, he was not even armed. The Assistant District Attorney who prosecuted petitioner wrote a letter in support of petitioner's release in 2010, stating "with certainty that before the case went to the jury, I was convinced that [petitioner] was not the shooter. I am also certain that [Supreme Court] was convinced that he was not the shooter." In a

subsequent letter written in support of the instant parole application, he wrote that "there was not a scintilla of evidence that [petitioner] was the shooter" and that "no one involved in the investigation ever believed that [petitioner] was the shooter or that he was armed." Indeed, during sentencing, Supreme Court stated that "[petitioner] stands before me having been found by the jury to have been a participant, but not the active prime mover. It is on that basis that he must be sentenced." Petitioner, who had no prior criminal record and could have received consecutive sentences amounting to an aggregate prison sentence of 37½ years to life, was sentenced to less than half of that.

This same commissioner also relied on his own subjective beliefs and experiences to interpret the facts in a manner contrary to the record by suggesting that petitioner was aware at the time of the incident that the victim was a police officer. Petitioner steadfastly maintained that he was unaware of such fact at any time during the course of events, and the record supports his assertion. Supreme Court described the victim as "a 55-year-old man . . . carrying a black gym bag[,] wearing a cap, corduroy pants and a coat," and the prosecuting attorney wrote that the victim was "dressed in clothes that suggested he was a middle-aged manual laborer." Yet this commissioner opined that, based upon his own training in the police academy, "when you're pulling out your gun, the first words that are supposed to simultaneously come off your lips is 'police.'" The emphasis that this commissioner placed on his belief that the victim must have identified himself as a police officer can only be viewed as relevant if it was also his belief that petitioner was the shooter; indeed, he stated that in his 20 years of experience in the system, "every single person who is charged with shooting an officer says [the victim] didn't say who he was."

Also troubling are repeated comments made by this same commissioner indicating that, because petitioner initially failed to cooperate with police in 1982 and neither of his two coconspirators were ever charged for their role in the offenses, petitioner put himself in the "precarious position" of being the only person who could be held accountable for the crimes. This commissioner implied that someone must continue to be punished

for the unfortunate death of this police officer and, absent the ability to punish the most culpable party, petitioner must continue to pay that price in his stead. Manifestly, such punitive considerations find no support in statute (see Executive Law § 259-i) and have absolutely no relevance to the decision to grant or deny parole.[1] As the Board's determination was tainted by these factual errors and improper considerations, it must be annulled (see Matter of King v New York State Div. of Parole, 83 NY2d 788, 791 [1994]; Matter of Prout v Dennison, 26 AD3d 540, 541 [2006]; Matter of Friedgood v New York State Bd. of Parole, 22 AD3d 950, 951 [2005]).

Even had such blatant factual errors and inappropriate considerations not affected the outcome, I would still find the Board's decision to be irrational. To be sure, pursuant to the governing statute and early Court of Appeals precedent governing the review of parole decisions, the courts' role appeared to be limited to discerning errors of fact or law (see Executive Law §

---

[1] To be clear, by no means am I suggesting that the consideration of petitioner's conduct after arrest and prior to confinement are irrelevant; rather, I am asserting only that it was improper for the Board to attribute relevance to the fact that petitioner was the only culprit who could continue to be held accountable for the crime. In any event, the commissioner's statement that it was petitioner's "pattern of lies" and deceit that allowed the other perpetrators to escape prosecution, and which left petitioner in the "precarious position" of being the only one that could be held accountable for the crime, is contrary to the facts. The Assistant District Attorney who prosecuted petitioner unequivocally stated in his letter in support of petitioner's release application that the police were already aware of the other perpetrators' involvement in the crime, and that there was no other information petitioner could have provided that would have aided in the investigation and prosecution of those other individuals. In fact, noticeably absent from the record is any explanation as to why the other perpetrators were not prosecuted. Certainly, petitioner should not be penalized for law enforcement activities and/or decisions over which he had no control.

259-i [5]; <u>Matter of Hines v State Bd. of Parole</u>, 293 NY 254, 257 [1944]).  However, more recent Court of Appeals jurisprudence, now well settled, propounds a more discerning standard under which such decisions should be reviewed for "irrationality bordering on impropriety" (<u>Matter of Silmon v Travis</u>, 95 NY2d at 476 [internal quotation marks and citation omitted]; <u>see</u> <u>Matter of Partee v Evans</u>, 117 AD3d 1258, 1259 [2014]).  In my view, this language suggests that — more than simply ratifying a decision made by the Board so long as it adheres to the statutory mandates — the role of the courts is to make some measure of substantive evaluation to assure that justice is served.  As the Court of Appeals taught in <u>Silmon</u>, "we review whether the Board's decision to deny parole was arbitrary or capricious" (<u>Matter of Silmon v Travis</u>, 95 NY2d at 476).[2]

Applying this standard, I fully acknowledge that parole release is not granted merely as a reward for good conduct, and that the decision to grant or deny parole rests primarily within the discretion of the Board.  I am also well aware that the showing required to set aside a parole decision is, indeed, a weighty one.[3]  However, given the lack of <u>any</u> evidence to support the Board's finding that there is a reasonable probability that petitioner would commit further crimes if released, and that his release would be incompatible with the welfare of society and undermine respect for the law, I find the Board's determination to be patently irrational.

The majority rightly notes that petitioner's achievements while incarcerated are truly remarkable and extraordinary, but in light of the task at hand, those accomplishments are worthy of iteration.  Petitioner, who entered prison at the age of 20 with

---

[2]  I am not challenging the rationality standard governing our review of parole decisions, as the majority suggests. Rather, I take issue with the majority's application of that standard to the facts of this case.

[3]  Such awareness is evinced by this dissent — the first dissent that I have penned from a decision of the Board in my over two decades on this Court.

a high school diploma, has since earned both a Bachelor's degree in organizational management and leadership skills and a Master's degree in professional studies. Over the three decades of his incarceration, petitioner has assumed the role of adjunct instructor and academic assistant through Nyack College and the New York Theological Seminary, and has also become the facilitator or coordinator for at least eight distinct programs within his current and former correctional facilities. Throughout his incarceration, petitioner has successfully participated in nearly every rehabilitative program available to him, including several years of therapeutic counseling focused in part on taking responsibility for his crime, services to prepare him for his transition out of prison and programs addressing, among other areas, marriage, parenting and alternatives to violence. Through these efforts, petitioner has fully accepted responsibility for his actions and has repeatedly expressed sincere remorse for all of those affected by his crime, particularly the family of the victim. In a personal statement in his application for release to community supervision, petitioner stated that "[s]ince the pain I have caused . . . remains in my heart, my life and actions will always demonstrate atonement." A practitioner who worked with petitioner stated that he "exemplifies the transformation toward responsibility, remorse, and making amends that we seek to achieve with all of our participants."

In addition, petitioner has not only maintained employment during his incarceration, serving most recently as the Inmate Director of the Transitional Services Program in which he oversees 15 to 20 other inmates, but also continues to work extensively to promote the rehabilitation of other inmates. Petitioner worked to create the Stop the Violence Peace Initiative at Sing Sing Correctional Facility to address violence within the prison and helped to raise $10,000 for the prison's Family Center, as well as for activities and school supplies for the children of inmates. He has established plans for employment outside of prison and successful integration back into the community in the form of letters of reasonable assurance from three organizations for employment and counseling, as well as close relationships with two established mentors. If released, petitioner would live with his wife, who he has known for more

than 30 years, and enjoy the support of a large network of friends and family.

Petitioner's behavioral record during his approximately 30 years of incarceration is extraordinary. He has incurred only one infraction ticket – and that almost a quarter century ago – for excess/altered clothing.[4] Moreover, according to both an independent psychological evaluation and his COMPAS Risk and Needs Assessment instrument, he is at the lowest possible risk level for reoffending. The author of the former evaluation stated that "[t]here is nothing further [petitioner] could be expected to do while incarcerated that could lower his risk level."

Over the years, petitioner has received an unprecedented outpouring of support and advocacy for his release by, among others, over 20 correction staff who supervise him on a daily basis, a former parole commissioner, the former Commissioner of Corrections and Community Supervision and the Assistant District Attorney who prosecuted his case. The Superintendent of Fishkill Correctional Facility, where petitioner is currently incarcerated, also wrote two letters in support of petitioner's release, one stating that he "would be fine having [petitioner] and his family as [his] neighbors" and the other calling petitioner "the poster child for [the Department of Corrections and Community Supervision]" and its programs.[5] A retired parole commissioner who denied petitioner's release in 2002 and 2006 wrote that he "strongly feel[s]" that petitioner "does [not] deserve to spend the remainder of his life incarcerated." Hundreds of other inmates and members of petitioner's community submitted letters of support or signed petitions in support of his release, prompting one commissioner to state, "I don't think

---

[4] It bears repeating that petitioner had never been convicted of a crime prior to that which resulted in his incarceration.

[5] Notably, Superintendent William J. Connolly shared that, in his 34 years in the corrections field, he authored only seven letters of this nature.

I've ever seen this many letters by correction officers in anyone's file," and another commissioner to remark that, as "one of the longest serving currently on the [B]oard . . ., [he had not] seen the amount of support that [petitioner has]."

Despite this abundance of evidence demonstrating petitioner's extraordinary rehabilitative achievements that would appear to strongly militate in favor of granting parole, two commissioners declined to do so, seemingly on the sole basis that a police officer was killed during the course of an attempted robbery.  As one of those commissioners frankly stated to petitioner during the hearing, "if you're held, the reason you would be held is because a police officer was murdered in the line of duty."  "The Legislature, however, has not defined 'seriousness of [the] crime' in terms of specific categories of either crimes or victims" (Matter of King v New York State Div. of Parole, 190 AD2d 423, 433 [1993], affd 83 NY2d 788 [1994]).  There can be no dispute that the crimes for which petitioner was convicted are serious and resulted in the tragic death of a police officer, but a blind eye cannot be turned to the facts underlying those offenses.  Not insignificantly, petitioner was convicted of murder under the felony murder statute, requiring an intention on the part of petitioner to commit the underlying felony, but not requiring proof that he fired the weapon or had an intention to kill (see Penal Law § 125.25 [3]).  Indeed, upon sentencing, Supreme Court noted that the evidence demonstrated that petitioner "did not go out into the street with the intention of committing murder."  Although "every murder conviction is inherently a matter of the utmost seriousness since it reflects the unjustifiable taking and tragic loss of a human life . . ., the Legislature has determined that a murder conviction per se should not preclude parole" (Matter of King v New York State Div. of Parole, 190 AD2d at 433; see also Matter of Costello v New York State Bd. of Parole, 101 AD3d 1512, 1517 [2012, Spain, J. dissenting], revd on other grounds ___ NY3d ___, 2014 NY Slip Op 04805 [2014] [noting that "those who oppose petitioner's parole release openly advocate the recurring position that an inmate convicted for the death of a law enforcement officer — even a nonshooter convicted of felony murder, as here — should never be released on parole.  It bears emphasis that this was not and is not the law."]).

Upon considering all of the evidence, I am left with the inescapable conclusion that the Board's decision to deny parole release to petitioner was irrational. Accordingly, I would reverse the judgment, annul the Board's determination and remit the matter to the Board for further proceedings not inconsistent with this decision.


Garry, J. (dissenting).

I fully agree with the dissent; however, I write separately to raise an additional issue. As previously stated in my concurring opinion in Matter of Montane v Evans (116 AD3d 197, 205 [2014], lv granted 23 NY3d 903 [2014]), I believe that our own Court has established an overbroad rule in appeals from denials of parole. The majority asserts that this clearly extraordinary case is not susceptible to reversal upon judicial review; we have then wholly abdicated our critical judicial function, and the courthouse doors are closed. For all the reasons stated in the thorough analysis of the Presiding Justice, this determination was irrational. No sound basis supports this individual's continuing incarceration. While our review powers are limited, they should not be applied in a manner that is so inordinately deferential as to render the appellate review process a mere sham.


        ORDERED that the judgment is affirmed, without costs.



                ENTER:


                Robert D. Mayberger
                Clerk of the Court