[981 NYS2d 866]

In the Matter of YOTUHEL MONTANE, Respondent, v ANDREA EV-
ANS, as Chair of the Division of Parole, Appellant.

Third Department, March 13, 2014

## APPEARANCES OF COUNSEL

*Eric T. Schneiderman, Attorney General*, Albany (*Frank Brady* of counsel), for appellant.

*Hollyer Brady, LLP*, New York City (*Orlee Goldfeld* of counsel), for respondent.

## OPINION OF THE COURT

PETERS, P.J.

Petitioner is currently serving a prison sentence of 3 to 9 years following his plea of guilty to conspiracy in the second degree in connection with his involvement in a major drug dealing operation. He appeared before the Board of Parole for the first time in April 2012, at which time the Board declined to release him to parole supervision and ordered him held for an additional 24 months. Petitioner filed an administrative appeal and, when it was not decided within four months, he commenced this CPLR article 78 proceeding. Supreme Court granted the petition, finding that the Board improperly focused almost exclusively on the seriousness of petitioner's crime and failed to properly consider other relevant factors. The court further concluded—relying on its prior decision in *Matter of Morris v New York State Dept. of Corr. & Community Supervision* (40 Misc 3d 226 [2013])—that the Board had failed to promulgate "written rules" regarding risk and needs assessments as mandated by the 2011 amendment to Executive Law § 259-c (4) and that, in the absence thereof, the Board's determination is "unlawful, arbitrary and capricious." Accordingly, Supreme Court annulled the Board's determination and directed that a new hearing be conducted. Respondent appeals.

Respondent contends that the 2011 amendment to Executive Law § 259-c (4) does not require the promulgation of formal rules and regulations regarding the procedures to be utilized in making parole release determinations, and that a written memorandum prepared and circulated to the members of the Board satisfied the requirements of the statute. Respondent further asserts that, on the merits, the Board's decision denying parole should have been upheld, as it was issued in compliance with the statutory requirements of Executive Law § 259-i and was not irrational. We address these arguments in turn and, finding merit to each, we reverse.

Prior to the 2011 amendment, Executive Law § 259-c (4) required the Board to establish "written guidelines" to be used in making parole release decisions, and provided that such

guidelines "may consider the use of a risk and needs assessment instrument" to assist the Board (L 2011, ch 62, § 1, part C, § 1, subpart A, § 38-b). Respondent accordingly adopted 9 NYCRR 8001.3 (a), which included a grid setting forth guidelines to be used in determining the customary total time served before release. This Court concluded that such guidelines were "not meant to establish a rigid, numerical policy invariably applied across-the-board to all [inmates] without regard to individualized circumstances or mitigating factors" (*Matter of Lue-Shing v Travis*, 12 AD3d 802, 803 [2004], *lv denied* 4 NY3d 705 [2005] [internal quotation marks and citations omitted]). Accordingly, we concluded that the "written guidelines" did not constitute "rules" or "regulations," and thus their validity was not dependent upon filing with the Secretary of State (*id.* at 803-804).

The 2011 amendment to Executive Law § 259-c (4) deleted the reference to "guidelines" and instead required the Board to establish "written procedures" to be used in making parole release decisions (*see* L 2011, ch 62, § 1, part C, § 1, subpart A, § 38-b). Such written procedures are intended to "assist" Board members "in determining which inmates may be released to parole supervision" (Executive Law § 259-c [4]). The amendment further specified that the procedures "shall incorporate risk and needs principles to measure the rehabilitation of persons appearing before the [B]oard [and] the likelihood of success of such persons upon release," and directed the development of an instrument capable of making a risk and needs assessment (Executive Law § 259-c [4], as amended by L 2011, ch 62, § 1, part C, § 1, subpart A, § 38-b; *see* Correction Law § 112 [4], as amended by L 2011, ch 62, § 1, part C, § 1, subpart A, § 19; Executive Law § 259-i [2]). Respondent issued a memorandum to Board members, dated October 5, 2011, specifically addressing the amendment to Executive Law § 259-c (4) and providing guidance concerning application of the statutory guidelines in light of the changes effectuated by the amendment.

■ Starting our analysis, as we must, with an examination of the language of the statute itself (*see Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55, 60 [2013]; *Matter of Raynor v Landmark Chrysler*, 18 NY3d 48, 56 [2011]), we find no indication that the amendment to Executive Law § 259-c (4) required the promulgation of formal rules and regulations. The plain language of the statute simply requires that the Board establish "written procedures" (Executive Law § 259-c [4]). Had the Legislature intended to require

that formal rules and regulations be promulgated, it could have explicitly said so, as it has in numerous other statutory provisions—including within neighboring provisions of the Executive Law addressing the Board's authority and obligations (*see* Executive Law §§ 259-j [2] ["The chair( ) of the board of parole shall promulgate rules and regulations governing the issuance of discharges from community supervision"]; 259-k [2] ["The board shall make rules for the purpose of maintaining the confidentiality of records, information contained therein and information obtained in an official capacity by officers, employees or members of the board of parole"]; *see e.g.* Agriculture and Markets Law §§ 16-a, 63; Correction Law §§ 201, 203, 500-b, 803, 806; Education Law §§ 101-a, 112, 3602; Executive Law §§ 99, 146, 312, 314; Railroad Law § 97 [4]; Judiciary Law § 212 [2] [b]). The Legislature's failure to do so here is a significant indication that it had no such intention to require that formal rules be promulgated (*see Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d at 60-61; *People v Ortega*, 69 NY2d 763, 765 [1987]; *Matter of Hicks v New York State Div. of Hous. & Community Renewal*, 75 AD3d 127, 132 [2010]; *Matter of Batti v Town of Austerlitz*, 71 AD3d 1260, 1262 [2010]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes §§ 74, 94).

Moreover, it is settled that

> " 'only a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers constitutes a rule or regulation' that must be promulgated in conformance with article IV, § 8 of the State Constitution and in substantial compliance with the State Administrative Procedure Act" (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 868 [2003], quoting *Matter of New York City Tr. Auth. v New York State Dept. of Labor*, 88 NY2d 225, 229 [1996]; *see Matter of Senior Care Servs., Inc. v New York State Dept. of Health*, 46 AD3d 962, 964 [2007]).

As we observed when addressing the "written guidelines" requirement under Executive Law former § 259-c (4), "decisions of the Board require flexibility and discretion and the guidelines used to arrive at these decisions are not meant to establish 'a rigid, numerical policy invariably applied across-the-board to all

[inmates] without regard to individualized circumstances or mitigating factors' " (*Matter of Lue-Shing v Travis*, 12 AD3d at 803, quoting *Matter of Schwartfigure v Hartnett*, 83 NY2d 296, 301 [1994]). Likewise, the "written procedures" required by the 2011 amendment were intended only to "*assist* members of the [Board] in determining which inmates may be released to parole supervision" (Executive Law § 259-c [4] [emphasis added]).

Pursuant to the 2011 amendments to the Executive Law, the Board must still conduct a case-by-case factual review of each inmate's application for release by consideration of the eight factors set forth in Executive Law § 259-i (2) (c) (A), but now such review must include an instrument that measures rehabilitation and the likelihood of success on parole (*see* Executive Law §§ 259-c [4]; 259-i [2] [c]). Notably, the "written procedures" mandated by the amendment to Executive Law § 259-c (4) "shall require" the Board to consider the statutory factors set forth in Executive Law § 259-i in determining whether "[d]iscretionary release on parole" should be granted (Executive Law § 259-i [2] [c] [A]). As such, they are clearly not intended to be determinative of whether an inmate could obtain release to parole. Indeed, the Legislature stressed that the 2011 amendments were not intended to interfere with the Board's "fundamental . . . authority to make release decisions based on the [B]oard members' independent judgment and application of statutory criteria" (L 2011, ch 62, § 1, part C, § 1, subpart A, § 1). Accordingly, we conclude that the 2011 amendment to Executive Law § 259-c (4) does not require promulgation of formal rules or regulations,[1] and thus the failure to file the requisite "written procedures" does not render the parole decision in violation of lawful procedure, arbitrary or capricious.

We also find that the October 2011 memorandum sufficiently establishes the requisite procedures for "incorporat-[ing] risk and needs principles" into the process of making parole release decisions (*see* Executive Law § 259-c [4]). The memorandum sets out the statutory factors contained in Execu-

---

**1.** Given the inconsistent holdings of the trial courts that have addressed this issue (*compare Matter of Partee v Evans*, 40 Misc 3d 896, 901-908 [2013], *with Matter of Morris v New York State Dept. of Corr. & Community Supervision*, 40 Misc 3d at 229-232), it is not surprising that the Board recently began the process of promulgating formal regulations to "memorialize[ ] . . . the . . . written procedures" contained in the October 2011 memorandum (Department of Corrections and Community Supervision Proposed Rule Making, NY Reg, Dec. 18, 2013 at 1).

tive Law § 259-i (2) (c) (A) that the Board is obliged to consider, and emphasizes that, while the statutory criteria remain unchanged by the 2011 amendments, they must be considered in light of the statute's "strong rehabilitative component." To that end, the memorandum directs—as the 2011 amendments require—Board members to specifically ascertain and consider the "steps an inmate has taken toward . . . rehabilitation" and "the likelihood of . . . success once released." To accomplish this objective, the memorandum directs members of the Board to utilize a "transition accountability plan" (hereinafter TAP)—an instrument that incorporates risk and needs principles—where available, as well as a COMPAS Risk and Needs Assessment instrument, in making all future parole release determinations. It further notes that members of the Board have been trained in the usage of the TAP and COMPAS instruments and their interplay, and instructs that such instruments are to be utilized and considered together with the statutory factors set forth in Executive Law § 259-i that have always been used in assessing the appropriateness for release. Through this memorandum, the Board satisfied its obligations under the 2011 amendments to Executive Law § 259-c (4).

■ Turning to the merits of the Board's decision, we disagree with Supreme Court's finding that the Board relied exclusively on the seriousness of petitioner's crime in denying his request for parole release. Rather, the record reflects that the Board properly considered other pertinent statutory factors in rendering its decision, including his clean disciplinary record, positive program participation, release plans and, significantly, his COMPAS assessment regarding the issues of risk to society, rehabilitation efforts and needs for successful reentry into the community (see Executive Law §§ 259-c [4]; 259-i [2] [c] [A]; compare Matter of Garfield v Evans, 108 AD3d 830, 830-831 [2013]). "The Board need not enumerate, give equal weight or explicitly discuss every factor considered and was entitled, as it did here, to place a greater emphasis on the gravity of his crime" (Matter of Serrano v Alexander, 70 AD3d 1099, 1100 [2010] [internal quotation marks and citations omitted]; see Matter of Santos v Evans, 81 AD3d 1059, 1060 [2011]).[2]

As the Board's decision does not exhibit " 'irrationality bordering on impropriety' " (Matter of Silmon v Travis, 95

---

**2.** To the extent that the concurrence asserts that "the letter and spirit of the 2011 amendments require . . . a more exacting judicial analysis" of the Board's parole release determinations, we cannot agree. To that end, we find it particularly revealing that the operative language of Executive Law § 259-i

NY2d 470, 476 [2000], quoting *Matter of Russo v New York State Bd. of Parole*, 50 NY2d 69, 77 [1980]; *compare Matter of Friedgood v New York State Bd. of Parole*, 22 AD3d 950 [2005]), it must be upheld.

GARRY, J. (concurring). I agree with the majority's disposition of this matter and with its conclusions that formal rulemaking was not required and that the denial of parole to petitioner was not irrational. I write separately as I do not agree with the brief, but in my view critically important, portion of the majority's determination that incorporates and continues to apply previously-established precedent regarding our limited review of the Board of Parole's analysis of the factors underlying its determinations. My concern is that the resulting constraint upon effective judicial review may impede progress toward implementing the 2011 amendments to the Executive Law.

In my view, the majority errs merely in incorporating the language that the Board "need not enumerate, give equal weight or explicitly discuss every factor considered and was entitled, as it did here, to place a greater emphasis on the gravity of his crime" (*Matter of Serrano v Alexander*, 70 AD3d 1099, 1100 [2010] [internal quotation marks and citations omitted]). This language undermines the statutory mandate requiring the Board to state the reasons for a denial (*see* Executive Law

_____

(2) (a)—which requires that the Board's reasons for denial be "given in detail and not in conclusory terms"—has remained unchanged by the 2011 amendments. This statutory threshold has always been interpreted to require "that those criteria which are relevant to a particular inmate *be taken into account by the [B]oard*" in some way, not that the Board expressly articulate every factor it considered in its determination (*Matter of Qafa v Hammock*, 80 AD2d 952, 953 [1981] [emphasis added]; *see Matter of King v New York State Div. of Parole*, 83 NY2d 788, 791 [1994]; *Matter of Shark v New York State Div. of Parole Chair*, 110 AD3d 1134, 1134 [2013]; *Matter of Vigliotti v State of N.Y. Exec. Div. of Parole*, 98 AD3d 789, 790 [2012], *lv dismissed* 20 NY3d 1034 [2013]; *Matter of Angel v Travis*, 1 AD3d 859, 860 [2003]; *People ex rel. Haderxhanji v New York State Bd. of Parole*, 97 AD2d 368, 369 [1983]; *see also Matter of Siao-Pao v Dennison*, 11 NY3d 777, 778 [2008] [whether the Board considered the proper factors should be assessed based on the "written determination . . . evaluated *in the context of the parole hearing transcript*" (emphasis added)]). In other words, since the 2011 amendments did not change the language of the statute governing the level of specificity required by the Board in rendering its parole determinations, there is no basis for this Court to alter our standard of review in this regard. While the 2011 amendments now require the Board to ascertain the steps an inmate has taken toward rehabilitation and the likelihood of success upon release and consider them in determining whether parole release should be granted, we cannot conclude that this transformed or otherwise altered the obligations of either the Board in articulating its determinations or this Court in reviewing such determinations.

§ 259-i [2] [a]). The lack of meaningful judicial review has engendered significant societal concern and criticism, including the charge that the courts' deferential approach "amounts to the unethical abdication of a judicial duty" (Edward R. Hammock & James F. Seelandt, Article, *New York's Sentencing and Parole Law: An Unanticipated and Unacceptable Distortion of the Parole Boards' Discretion*, 13 St. John's J Legal Comment 527, 556 [1999]).

The 2011 amendments to the Executive Law were expressly intended to shift the focus of correction and parole away from punishing an inmate for his or her criminal past toward the goal of "promot[ing] [his or her] . . . successful and productive reentry into society" (L 2011, ch 62, § 1, part C, § 1, subpart A, § 1; *see* Correction Law § 70 [2]). In enacting these amendments, the Legislature required the Board to incorporate risk and needs principles into the review process, to measure the rehabilitation of applicants for parole, and to assess the likelihood that they would be successful upon release. Consistent with these requirements, the October 2011 memorandum mandates that the Board must ascertain what rehabilitative steps have been taken by parole applicants and the likelihood of successful release, discuss these issues with applicants, and consider them in its deliberations. Meaningful review of the Board's compliance with the statutory directives cannot be accomplished if the Board need not even enunciate the factors that it finds determinative in any given case. Our exceptionally deferential precedent allows too much mystery and too little analysis. Effective and appropriate judicial review requires standards. Substantial justice is achieved when established rules are impartially applied—and reliance upon established factors leads to predictability of result, a hallmark of lawful society.

Pursuant to the 2011 amendments, which require an assessment of all inmates to determine their penological needs and facilitate their reintegration into the community, "the rehabilitation of persons appearing before the [B]oard [and] the likelihood of success of such persons upon release" is *always* a relevant factor that must be considered when an application for parole release is made (Executive Law § 259-c [4]; *see* Correction Law § 112 [4]). If the record in a future case fails to reveal that the Board has done so, the decision may reflect "irrationality bordering on impropriety" warranting judicial intervention (*Matter of Silmon v Travis*, 95 NY2d 470, 476 [2000] [internal

quotation marks and citation omitted]). In this case, I agree with the majority in noting that the Board did comply with the 2011 amendments by expressly assessing petitioner's rehabilitative efforts, risks and needs, while also determining that these were outweighed by other factors. It is therefore unnecessary for this Court now to repeat and reinforce precedent that was developed under prior law. Instead, the letter and spirit of the 2011 amendments require the development of a more exacting judicial analysis, within a deferential standard.

Ordered that the judgment is reversed, on the law, without costs, and petition dismissed.

STEIN and McCARTHY, JJ., concur.