*733 OPINION OF THE COURT
S. Peter Feldstein, J.
This is a proceeding for judgment pursuant to article 78 of the CPLR that was originated by the petition of Antonio Williams, verified on January 26, 2015 and filed in the Franklin County Clerk’s office on January 28, 2015. Petitioner is an inmate at the Bare Hill Correctional Facility and is challenging the April 2014 decision denying him discretionary parole release and directing that he be held for an additional 24 months. The court issued an order to show cause on February 3, 2015 and has received and reviewed respondent’s answer and return, including in camera materials, verified on March 25, 2015 and supported by the letter memorandum of Christopher J. Fleury, Esq., Assistant Attorney General, dated March 25, 2015 and by the affirmation of Terrence X. Tracy, Esq., Counsel to the New York State Board of Parole, dated March 23, 2015. No reply has been received from petitioner.
On February 1, 1993 petitioner was sentenced in Erie County Court to an indeterminate sentence of 15 years to life upon his conviction of the crime of murder in the second degree. On May 30, 2008 he was sentenced in Jefferson County Court, as a second felony offender, to a consecutive determinate term of five years, with five years’ postrelease supervision, upon his conviction of the crime of assault in the second degree. The criminal offense underlying the Jefferson County conviction was committed by petitioner while in Department of Corrections and Community Supervision (DOCCS) custody.
After having previously been denied discretionary parole release[1] petitioner made his reappearance before a Parole Board on April 29, 2014. Following that reappearance a decision was issued again denying him discretionary parole release and directing that he be held for an additional 24 months. The April 2014 parole denial determination reads as follows:
*734 “AFTER A REVIEW OF THE RECORD AND INTERVIEW, THE PANEL HAS DETERMINED THAT IF RELEASED AT THIS TIME, THERE IS A REASONABLE PROBABILITY THAT YOU WOULD NOT LIVE AND REMAIN AT LIBERTY WITHOUT AGAIN VIOLATING THE LAW AND YOUR RELEASE WOULD BE INCOMPATIBLE WITH THE WELFARE OF SOCIETY AND WOULD SO DEPRECATE THE SERIOUS NATURE OF THE CRIME AS TO UNDERMINE RESPECT FOR THE LAW. THE PANEL HAS CONSIDERED YOUR INSTITUTIONAL ADJUSTMENT INCLUDING DISCIPLINE AND PROGRAM PARTICIPATION. REQUIRED STATUTORY FACTORS HAVE BEEN CONSIDERED, INCLUDING YOUR RISK TO SOCIETY!,] REHABILITATION EFFORTS, AND YOUR NEEDS FOR SUCCESSFUL RE-ENTRY INTO THE COMMUNITY. YOUR RELEASE PLANS HAVE ALSO BEEN CONSIDERED, AS WELL AS YOUR COM-PAS RISK AND NEEDS ASSESSMENT AND SENTENCING MINUTES WHICH ARE IN THE FILE.[2] YOU STAND CONVICTED OF THE SERIOUS OFFENSES OF MURDER 2ND AND ASSAULT 2ND, IN THE INCIDENT IN 1991 IN ERIE COUNTY, SHOT AND KILLED A MALE VICTIM AND WHILE CONFINED AT A CORRECTIONAL FACILITY, DURING A FIGHT WITH ANOTHER INMATE, INJURED A CORRECTION OFFICER. YOUR CRIMINAL HISTORY DATES BACK TO APPROXIMATELY THE MID 1980’S AND INCLUDES A FELONY WEAPON POSSESSION CONVICTION AND IS EXTENSIVE. THIS PANEL REMAINS CONCERNED ABOUT YOUR LENGTHY HISTORY OF UNLAWFUL CONDUCT, YOUR FAILURE ON COMMUNITY SUPERVISION AND QUESTIONABLE COMPLIANCE WITH DOCCS RULES.[3] ACCORDINGLY, DISCRE- *735 TIONAEY RELEASE AT THIS TIME IS INCONSISTENT WITH THE PUBLIC SAFETY AND WELFARE. PAROLE DENIED.”
The document perfecting petitioner’s administrative appeal from the April 2014 parole denial determination was received by the DOCCS Board of Parole Appeals Unit on September 26, 2014. The Appeals Unit, however, failed to issue its findings and recommendation within the four-month time frame set forth in 9 NYCRR 8006.4 (c). This proceeding ensued.
Executive Law § 259-i (2) (c) (A) (as amended by L 2011, ch 62, § 1, part C, § 1, subpart A, § 38-f-l, eff Mar. 31, 2011) provides, in relevant part, as follows:
“Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law. In making the parole release decision, the procedures adopted pursuant to subdivision four of section two hundred fifty-nine-c of this article shall require that the following be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interactions with staff and inmates . . . (iii) release plans including community resources, employment, education and training and support services available to the inmate . . . (vii) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the presentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest prior to confinement; and (viii) prior criminal record, including the nature and pattern of offenses, *736 adjustment to any previous probation or parole supervision and institutional confinement.”
Discretionary parole release determinations are statutorily deemed to be judicial functions which are not reviewable if done in accordance with law (Executive Law § 259-i [5]) unless there has been a showing of irrationality bordering on impropriety. (See Matter of Silmon v Travis, 95 NY2d 470 [2000]; Matter of Hamilton v New York State Div. of Parole, 119 AD3d 1268 [2014]; Matter of Vasquez v Dennison, 28 AD3d 908 [2006]; Matter of Webb v Travis, 26 AD3d 614 [2006].) Unless the petitioner makes a “convincing demonstration to the contrary” the court must presume that the New York State Board of Parole acted properly in accordance with statutory requirements. (See Matter of Nankervis v Dennison, 30 AD3d 521 [2006]; Matter of Zane v Travis, 231 AD2d 848 [1996]; Matter of McLain v New York State Div. of Parole, 204 AD2d 456 [1994].)
Petitioner first argues, in effect, that the parole denial determination was at least partially based upon information that he had been denied an earned eligibility certificate (EEC) (Correction Law § 805). According to petitioner, however, his controlling sentence rendered him ineligible to be considered for an EEC. Under the provisions of 7 NYCRR 2100.3 (a) an eligible inmate for EEC purposes “means an inmate who is serving an indeterminate sentence with a minimum term of eight years or less.” It is thus clear that the 15-year minimum period of petitioner’s Erie County sentence rendered him ineligible to receive an EEC. Nevertheless, it is also clear that by determination dated April 9, 2014 petitioner was notified, in relevant part, as follows:
“THE COMMISSIONER OF THE DEPARTMENT OF CORRECTIONAL SERVICES HAS REACHED THE FOLLOWING DETERMINATION, WHICH HAS BEEN PROVIDED TO THE DIVISION OF PAROLE . . . CERTIFICATE OF EARNED ELIGIBILITY DENIED[.] REASON(S): REFUSAL TO PARTICIPATE IN PROGRAMS/TREATMENT RECOMMEND BY DEPARTMENT STAFF [.]”
A copy of the certificate of earned eligibility determination notice is annexed to the respondent’s answer and return as exhibit G thereof.
The subject of the EEC denial was addressed at petitioner’s April 29, 2014 Parole Board appearance when the following colloquy occurred:
*737 “Q [Parole Board Commissioner]: Okay. Now, you have been denied an Earned Eligibility Certificate due to your refusal to participate in programs and treatment, are you aware of that?
“A [Petitioner]: Yes, but I would like to say something on that right there. I’m currently serving 15 to life, when you are serving a life sentence, the Earned Eligibility Certificate, you are not eligible for it.[4]
“The computer keeps showing it because of the five flat [Jefferson County five-year determinate term], it keeps popping it up. Me and the counselor discussed this the other day. I’m not eligible for it [an EEC] regardless.”
Where erroneous information serves as a basis for a parole denial determination such determination must be vacated and a new hearing ordered. (See Matter of Smith v New York State Bd. of Parole, 34 AD3d 1156 [2006]; Matter of Hughes v New York State Div. of Parole, 21 AD3d 1176 [2005]; Matter of Lewis v Travis, 9 AD3d 800 [2004].) Strictly speaking, the information before the Parole Board with respect to the EEC denial determination was not really erroneous in the sense that the denial determination had, in fact, been issued. Petitioner’s point, however, is that he was ineligible to receive an EEC and, therefore, the EEC denial determination was issued in error. Under these circumstances the court finds it appropriate to consider petitioner’s argument utilizing the same legal analysis it would utilize where actual erroneous information was allegedly before a Parole Board. In the case at bar, however, the court finds nothing in the record to suggest that the erroneously-issued decision denying petitioner an EEC actually served, even in part, as a basis for the parole denial determination. (See Matter of Sutherland v Evans, 82 AD3d 1428 [2011]; Matter of Restivo v New York State Bd. of Parole, 70 AD3d 1096 [2010].) In this regard it is noted that petitioner’s ineligibility to be considered for an EEC was discussed during the course of his April 29, 2014 Parole Board appearance. The written parole denial determination, moreover, makes no reference to the EEC denial and, in addition, near the top of the second page of the Parole Board release decision notice printout (just before the text of the parole denial determination is set *738 forth) the following appears: “Earned Eligibility Certificate: INELIGIBLE[.]” Petitioner’s argument on this point is, therefore, rejected.
Petitioner next argues, in effect, that the Parole Board focused excessively on the serious nature of the crimes underlying his incarceration, as well as his prior criminal record, without adequate consideration of his rehabilitative efforts/ accomplishments. A Parole Board, however, need not assign equal weight to each statutory factor it is required to consider in connection with a discretionary parole determination, nor is it required to expressly discuss each of those factors in its written decision. (See Matter of Montane v Evans, 116 AD3d 197 [2014], lv granted 23 NY3d 903 [2014], appeal dismissed 24 NY3d 1052; Matter of Valentino v Evans, 92 AD3d 1054 [2012]; Matter of Martin v New York State Div. of Parole, 47 AD3d 1152 [2008].) As noted by the Appellate Division, Third Department, the role of a court reviewing a parole denial determination
“is not to assess whether the Board gave the proper weight to the relevant factors, but only whether the Board followed the statutory guidelines and rendered a determination that is supported, and not contradicted, by the facts in the record. Nor could we effectively review the Board’s weighing process, given that it is not required to state each factor that it considers, weigh each factor equally or grant parole as a reward for exemplary institutional behavior.” (Matter of Comfort v New York State Div. of Parole, 68 AD3d 1295, 1296 [2009] [citations omitted].)
In the case at bar, reviews of the Parole Board report (May 2014 reappearance) and transcript of petitioner’s April 29, 2014 Parole Board appearance reveal that the Board had before it information with respect to the appropriate statutory factors, including petitioner’s therapeutic/vocational programing records, COMPAS ReEntry Risk Assessment Instrument, partial sentencing minutes, disciplinary record (clean since his last Parole Board appearance) and release plans/community support in addition to the circumstances of the crimes underlying his incarceration and prior criminal record (including parole and probation violations). The court, moreover, finds nothing in the hearing transcript to suggest that the Parole Board cut short petitioner’s discussion of any relevant factor or otherwise prevented him from expressing clear and complete responses *739 to its inquiries. Indeed, before the April 29, 2014 interview was concluded one of the presiding commissioners inquired of petitioner as follows: “Mr. Williams, is there anything that we haven’t talked about that you would like us to know?” Petitioner responded as follows:
“Basically I’m trying to get home. I’ve been staying out of trouble, I’ve been doing what I’m supposed to do. I really need to go to the streets and be with my family as well as with my fiancé [sic], because she’s in the Waterfront Rehabilitation Center. She had a stroke and she’s slightly paralyzed on the left side. She’s been with me since 2005 all the way to now.”
In view of the above, the court finds no basis to conclude that the Parole Board failed to consider the relevant statutory factors. (See Matter of Pearl v New York State Div. of Parole, 25 AD3d 1058 [2006]; Matter of Wan Zhang v Travis, 10 AD3d 828 [2004].) Since the requisite statutory factors were considered, and given the narrow scope of judicial review of discretionary parole denial determinations, the court finds no basis to conclude that the denial determination in this case was affected by irrationality bordering on impropriety as a result of the emphasis placed by the Board on the nature of the crimes underlying petitioner’s incarceration, one of which was committed while in DOCCS custody, as well as his prior criminal record (including parole/probation violations) and “questionable compliance with DOCCS rules.” (See Matter of Thompson v New York State Bd. of Parole, 120 AD3d 1518 [2014]; Matter of Shark v New York State Div. of Parole Chair, 110 AD3d 1134 [2013], lv dismissed 23 NY3d 933 [2014]; Matter of Dalton v Evans, 84 AD3d 1664 [2011].)
To the extent petitioner purports to rely on Matter of King v New York State Div. of Parole (190 AD2d 423 [1993], affd 83 NY2d 788 [1994]), the court finds such reliance misplaced. In King the Appellate Division, First Department, not only determined that the Parole Board improperly considered matters not within its purview (penal policy with respect to convicted murderers) but also that the Parole Board failed “to consider and fairly weigh all of the information available to them concerning petitioner that was relevant under the statute, which clearly demonstrates his extraordinary rehabilitative achievements and would appear to strongly militate in favor of granting parole.” (Id. at 433.) The appellate-level Court in King went on to note that the only statutory criterion *740 referenced by the Board in the parole denial determination was the seriousness of the crime underlying Mr. King’s incarceration (felony murder of an off-duty police officer during the robbery of a fast food restaurant). According to the Appellate Division, First Department, “[s]ince . . . the Legislature has determined that a murder conviction per se should not preclude parole, there must be a showing of some aggravating circumstances beyond the inherent seriousness of the crime itself.” (Id. at 433.)
This court (Supreme Court, Franklin County) first notes that although the nature of the crime underlying Mr. King’s incarceration was somewhat similar in nature to one of the crimes underlying petitioner’s incarceration (murder in the second degree), Mr. King had no prior contacts with the law (id. at 426) while petitioner has a substantial prior criminal record and committed one of his instant offenses (assault in the second degree) while already confined in DOCCS custody. The record of the petitioner herein also includes prior parole/ probation violations. These distinguishing features appear to meet the First Department’s requirement that a parole denial determination be supported by aggravating circumstances beyond the inherent seriousness of the underlying crime. In any event, however, in July of 2014 the Appellate Division, Third Department — whose precedent is binding on this court — effectively determined that the above-referenced “aggravating circumstances” requirement enunciated by the First Department in King does not represent the state of the law in the Third Department. (See Matter of Hamilton v New York State Div. of Parole, 119 AD3d 1268 [2014].) In Hamilton it was noted that the Third Department
“has repeatedly held — both recently and historically — that, so long as the [Parole] Board considers the factors enumerated in the statute [Executive Law § 259-i (2) (c) (A)] it is ‘entitled ... to place a greater emphasis on the gravity of [the] crime’ (Matter of Montane v Evans, 116 AD3d 197, 203 [2014], lv granted 23 NY3d 903 [2014] [internal quotation marks and citation omitted].” (Id. at 1271 [other citations omitted].)
After favorably citing nine Third Department cases decided between 1977 and 2014, the Hamilton court ended the string of cites as follows:
“but see Matter of King v New York State Div. of Pa *741 role, 190 AD2d 423, 434 [1993], affd on other grounds 83 NY2d 788 [1994] [a First Department case holding, in conflict with our precedent, that the Board (of Parole) may not deny discretionary release based solely on the nature of the crime when the remaining statutory factors are considered only to be dismissed as not outweighing the seriousness of the crime].”[5] (119 AD3d 1268, 1272.)
The Hamilton court continued as follows:
“Particularly relevant here, we have held that, even when a petitioner’s institutional behavior and accomplishments are ‘exemplary,’ the Board may place ‘particular emphasis’ on the violent nature or gravity of the crime in denying parole, as long as the relevant statutory factors are considered (Matter of Valderrama v Travis, 19 AD3d at 905). In so holding, we explained that, despite [the Valderrama] petitioner’s admirable educational and vocational accomplishments and positive prison disciplinary history, ‘[o]ur settled jurisprudence is that a parole determination made in accordance with the requirements of the statutory guidelines is not subject to further judicial review unless it is affected by irrationality bordering on impropriety’ (id. [internal quotation marks and citations omitted]). We emphasize that this Court [Appellate Division, Third Department] has repeatedly reached the same result, on the same basis, when reviewing denials of parole to petitioners whom we recognized as having exemplary records and as being compelling candidates for release.” (119 AD3d 1268, 1272 [additional citations omitted].)
The court therefore rejects petitioner’s argument on this point.
At this juncture the court finds it appropriate to note that near the top of page four of petitioner’s September 22, 2014 ap-
*742 pellant’s brief (on administrative appeal), which was incorporated by reference into the petition in this proceeding, it is asserted that
“the law is even clearer that at a second or subsequent Parole Board interview, the Board may only focus on the inmate’s institutional record, record of temporary release participation and release plans. The focus is not to be on the seriousness of the offense and the inmate’s past criminal history.”
This assertion, made without citation to any statutory, regulatory or judicial authority, is simply incorrect. The court finds nothing in Executive Law § 259-i (2) (c) (A) to suggest that the seriousness of the offense(s) underlying an inmate’s incarceration (Executive Law § 259-i [2] [c] [A] [vii]) and/or such inmate’s prior criminal record (Executive Law § 259-i [2] [c] [A] [viii]) may not be considered by a Parole Board, or must be considered to a lesser extent by a Parole Board, in the context of second or subsequent appearance(s)/interview(s). (See Matter of Martinez v Evans, 108 AD3d 815 [2013]; Matter of Dalton v Evans, 84 AD3d 1664 [2011]; Matter of Allen v Evans, 82 AD3d 1427 [2011].)
Executive Law § 259-c (4) was amended by Laws of 2011, chapter 62, § 1, part C, § 1, subpart A, § 38-b (eff Oct. 1, 2011), to provide that the New York State Board of Parole shall
“establish written procedures for its use in making parole decisions as required by law. Such written procedures shall incorporate risk and needs principles to measure the rehabilitation of persons appearing before the board, the likelihood of success of such persons upon release, and assist members of the state board of parole in determining which inmates may be released to parole supervision.”[6]
To the extent petitioner argues that the Parole Board failed to adopt rules or regulations implementing the above-referenced amendment to Executive Law § 259-c (4), the court finds that the promulgation of a certain October 5, 2011 memorandum from Andrea W. Evans, then Chairwoman, New York State Board of Parole, satisfied the Parole Board’s obligations with *743 respect to the 2011 amendments to Executive Law § 259-c (4). (See Matter of Partee v Evans, 117 AD3d 1258 [2014], lv denied 24 NY3d 901 [2014]; Matter of Montane v Evans, 116 AD3d 197 [2014], lv granted 23 NY3d 903 [2014], appeal dismissed 24 NY3d 1052 [2014].)
Petitioner also appears to argue that the Parole Board improperly evaluated his risk assessment in that he was scored as a low risk for committing a new violent felony offense, for rearrest and/or for absconding. This court notes, however, that although the Appellate Division, Third Department, has determined that a risk and needs assessment instrument (such as COMPAS) must be utilized in connection with post-September 30, 2011 parole release determinations (see Matter of Linares v Evans, 112 AD3d 1056 [2013]; Matter of Malerba v Evans, 109 AD3d 1067 [2013], lv denied 22 NY3d 858 [2014]; Matter of Garfield v Evans, 108 AD3d 830 [2013]), there is nothing in such cases, or the amended version of Executive Law § 259-c (4), to suggest that the quantified risk assessment determined through utilization of the risk and needs assessment instrument supercedes the independent discretionary authority of the Parole Board to determine, based upon its consideration of the factors set forth in Executive Law § 259-i (2) (c) (A), whether or not an inmate should be released to parole supervision. The “risk and need principles” that must be incorporated pursuant to the amended version of Executive Law § 259-c (4), while intended to measure the rehabilitation of a prospective parolee as well as the likelihood that he/she would succeed under community-based parole supervision, serve only to “assist members of the state board of parole in determining which inmates may be released to parole supervision.” (Executive Law § 259-c [4] [emphasis added].) Thus, while the Parole Board was required to consider the COMPAS instrument when exercising its discretionary authority to determine whether or not petitioner should be released from DOCCS custody to community-based parole supervision, it was not bound by the quantified results of the COMPAS assessment and was free to grant or deny parole based upon its independent assessment of the factors set forth in Executive Law § 259-i (2) (c) (A) including, as here, the nature of the crimes underlying his incarceration, his prior criminal record and “questionable compliance with DOCCS rules.” (See Matter of Rivera v New York State Div. of Parole, 119 AD3d 1107 [2014]; Matter of Partee v Evans, 40 Misc 3d 896 [2013], affd 117 AD3d 1258 [2014], lv denied 24 NY3d 901 [2014].)
*744 Although petitioner correctly asserts that a transitional accountability plan (TAP) was not prepared in conjunction with the discretionary parole release consideration process, the court finds that this does not constitute a basis to overturn the April 2014 parole denial determination. As part of the same legislative enactment wherein Executive Law §§ 259-c (4) and 259-i (2) (c) (A) were amended (L 2011, ch 62, § 1, part C, § 1, subpart A), a new Correction Law § 71-a was added, as follows:
“Upon admission of an inmate committed to the custody of the department [DOCCS] under an indeterminate or determinate sentence of imprisonment, the department shall develop a transitional accountability plan. Such plan shall be a comprehensive, dynamic and individualized case management plan based on the programming and treatment needs of the inmate. The purpose of such plan shall be to promote the rehabilitation of the inmate and their successful and productive reentry and reintegration into society upon release. To that end, such plan shall be used to prioritize programming and treatment services for the inmate during incarceration and any period of community supervision.”
While Correction Law § 71-a became effective on October 1, 2011, the court finds nothing in the legislative enactment to suggest that it was intended to mandate the preparation of TAPs with respect to inmates — such as petitioner — already in DOCCS custody prior to the effective date of the statute. (See Matter of Tran v Evans, 126 AD3d 1196 [2015]; Matter of Rivera v New York State Div. of Parole, 119 AD3d 1107 [2014].)
Finally, the court rejects petitioner’s argument that
“[w]hen the [Parole] Board bases its ruling in denying parole upon the nature of the inmate’s offense, it is essentially imposing a sentence on the defendant, a task that has already been performed by the sentencing judge. When the Parole Board makes this type of determination, it is acting outside the scope of its authority under the law and usurping the authority of the sentencing court.”
In conjunction with this argument, petitioner cites Matter of Standley v New York State Div. of Parole (34 AD3d 1169 [2006]) for the proposition “that the Parole Board must follow the judge’s sentencing recommendations in order to comply with Executive Law § 259-i.” (Emphasis added.)
*745 Obviously DOCCS/parole officials are conclusively bound by the sentencing structure imposed by the sentencing court(s). (See Matter of Garner v New York State Dept. of Correctional Servs., 10 NY3d 358 [2008]; Matter of Murray v Goord, 1 NY3d 29 [2003].) In the case at bar it appears undisputed that under the judicially-imposed multiple sentence structure petitioner was again eligible for discretionary parole release consideration in the spring of 2014. When considering whether or not to grant such discretionary release the Parole Board is statutorily required to consider the factors set forth in Executive Law § 259-i (2) (c) (A), including any “recommendations of the sentencing court.” (Executive Law § 259-i [2] [c] [A] [vii].) Petitioner’s assertion to the contrary notwithstanding, in Matter of Standley v New York State Div. of Parole (34 AD3d 1169 [2006]) the Appellate Division, Third Department only determined that a Parole Board was statutorily mandated to consider (rather than follow) the recommendations of the sentencing judge with respect to parole release. In any event, petitioner’s papers fail to identify any parole release recommendation issued by either of his sentencing judges.
Based upon all of the above, it is, therefore, the decision of the court and it is hereby adjudged, that the petition is dismissed.

. The number of times petitioner has been denied discretionary parole release is difficult to discern from the record. A review of the transcript of the April 29, 2014 Parole Board reappearance suggests that petitioner was denied discretionary parole release on three occasions prior to April of 2014. Other portions of the record suggest that petitioner’s parole eligibility date was calculated as September 9, 2012 and thus the April 29, 2014 Parole Board reappearance represented only his second appearance. Although the court cannot be certain, it is entirely possible that petitioner was denied discretionary parole release on two occasions prior to the imposition of the 2008 Jefferson County sentence and, thus, the April 29, 2014 represented petitioner’s second Parole Board appearance under the multiple sentence structure.

. Notwithstanding this statement in the parole denial determination the record herein only contains the minutes of petitioner’s 2008 Jefferson County sentence. The record indicates, moreover, that the minutes of petitioner’s 1993 Erie County sentencing were unavailable from the court. In any event, no issue with respect to sentencing minutes is raised in this proceeding.

. As far as petitioner’s “questionable compliance with DOCCS rules” is concerned, it is noted not only that the crime underlying his 2008 Jefferson *735 County conviction (assault in the second degree) represents a class D violent felony offense (Penal Law § 70.02 [1] [c]) committed while confined in DOCCS custody, but also that his prison disciplinary record (although clean since his 2012 Parole Board appearance) includes 23 tier II and 10 tier III infractions (see inmate disciplinary history printout annexed to respondent’s answer and return as part of exhibit H thereof).

. Under the previously-quoted provisions of 7 NYCRR 2100.3 (a), the 15-year minimum period of petitioner’s 1993 sentence, rather than the life maximum term thereof, rendered him ineligible for EEC consideration.

. The Court of Appeals in King only referenced the fact that
“one of the [Parole] Commissioners considered factors outside the scope of the applicable statute, including penal philosophy, the historical treatment of individuals convicted of murder, the death penalty, life imprisonment without parole, and the consequences to society if those sentences are not in place. Consideration of such factors is not authorized by Executive Law § 259-i.” (83 NY2d 788, 791.)
The Court of Appeals, however, did not address that aspect of the Appellate Division, First Department, decision in King holding that a parole denial determination must be based upon a showing of some aggravating circumstances beyond the inherent seriousness of the underlying crime.

. Prior to the amendment the statute had provided, in relevant part, that the Board of Parole shall “establish written guidelines for its use in making parole decisions as required by law . . . Such written guidelines may consider the use of a risk and needs assessment instrument to assist members of the state board of parole in determining which inmates may be released to parole supervision.”